OPINION
{¶ 1} Appellant Lori Thornton appeals a judgment of the Court of Common Pleas, Juvenile Division, of Tuscarawas County, Ohio, which granted legal custody of two of her daughters, then age 6 and 2, to the Moulton family, and granted legal custody of her 4 year old son to the Henry family. The trial court terminated appellant's parental rights in the three oldest children: sons, aged 8 and 10, and the eldest daughter, aged 7. The court granted permanent custody of these three children to appellee Tuscarawas County Job and Family Services. Appellant assigns five errors to the trial court:
 {¶ 2} "I. THE TRIAL COURT ERRED IN SUSTAINING JOB AND FAMILY SERVICES' MOTION FOR PERMANENT CUSTODY OF ERIC, RYAN AND DESIRAY THORNTON AS JOB AND FAMILY SERVICES FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT THE CHILDREN CANNOT AND SHOULD NOT BE PLACED WITH LORI THORNTON WITHIN A REASONABLE TIME.
 {¶ 3} "II. THE TRIAL COURT ERRED IN SUSTAINING JOB AND FAMILY SERVICES MOTION FOR PERMANENT CUSTODY OF ERIC, RYAN AND DESIRAY THORNTON AS JOB AND FAMILY SERVICES FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT ITS MOTION FOR PERMANENT CUSTODY WAS IN THE BEST INTEREST OF THE CHILDREN.
 {¶ 4} "III. THE TRIAL COURT ERRED IN SUSTAINING JOB AND FAMILY SERVICES MOTION FOR PERMANENT CUSTODY OF ERIC, RYAN AND DESIRAY THORNTON AS ITS MOTION WAS NOT TIMELY FILED.
 {¶ 5} "IV. THE TRIAL COURT ERRED IN ITS DETERMINATION THAT JOB AND FAMILY SERVICES PUT FORTH A GOOD FAITH AND DILIGENT EFFORT TO REHABILITATE THE FAMILY SITUATION.
 {¶ 6} "V. THE TRIAL COURT ERRED IN SUSTAINING JOB AND FAMILY SERVICE'S MOTION TO PLACE GRACE AND KAYLEE THORNTON IN THE LEGAL CUSTODY OF RAYMOND AND JACKIE MOULTON AND JESSE THORNTON, JR. IN THE LEGAL CUSTODY OF LORI AND DARRIN HENRY."
 {¶ 7} The record indicates JFS removed five of the children from appellant's residence. The 10 year old son was not residing with appellant at the time, because appellant had voluntarily placed him in Stepping Stones, a group home treatment facility. The court found all children to be dependent and neglected, and the three girls were placed in the temporary custody of the Moulton family. JFS took temporary custody of the three boys.
 {¶ 8} The trial court made eleven findings of fact. The children's father, who was not a party to this appeal, is a convicted sex offender whose victim was a child, although apparently not one of the children in this case. The father has other criminal convictions as well, and has a history of domestic violence and chemical abuse. The court found the father had not had any treatment for the behaviors and his parenting skills are non-existent. He and appellant are no longer married.
 {¶ 9} Appellant suffers from multiple sclerosis, and the court found she was non-compliant or sporadic in seeking medical treatment. The court found she was unable to manage the general care of her six children. The court found while appellant's illness had hindered her ability to care for the children, the illness did not cause her negative parenting issues, but only exacerbates them. The court found appellant had almost no real understanding of the negative behaviors her children demonstrated. The court found appellant does not understand what their behaviors indicate, and appellant states she did not see any inappropriate sexual behavior while the children were in her care. The court found if appellant does recognize the inappropriate behavior of the children she minimizes it, excuses it, or simply does not react. She has been unable to articulate any real plan to correct the children's behaviors, and although she received instruction in parenting skills, has not used any during her supervised visits.
 {¶ 10} The court found the 10 year old son displayed bizarre and inappropriate sexual behavior. This child is disrespectful, angry, and aggressive. The child is distrustful of everyone and has low impulse control. The child easily controls his mother, and has expressed a desire to hurt people. The child indicates he takes pleasure in other people's pain or discomfort.
 {¶ 11} The 8 year old son wets his bed daily. In the past he has repeatedly smeared feces on himself, the floors, and the walls, although this behavior had ceased at the time of the hearing. The court found this child appears to have no ability to bond with anyone, and manages his relationships with others by manipulating them. The child reported he has watched his father's sexual activity with his father's knowledge. This child also reported he saw one of his brothers raped by the brother of his father's girlfriend.
 {¶ 12} The court found 7 year old daughter is very difficult to manage, and acts out sexually. The court found she is particularly unamenable to discipline, and she and her brothers need tremendous structure in their lives.
 {¶ 13} The court found the children had clearly been victims of trauma, lack of supervision and discipline, exposure to sexual behavior, and possibly been sexually abused. The court found some of the children had engaged in sexual acts with each other. The court found JFS could not keep the children together because their behavior is unmanageable, and the oldest boy is in residential treatment because he could not be maintained elsewhere.
 {¶ 14} The court found overall, compliance with case plan services has been partial or rather slow for both parents, although appellant has been more successful in her compliance than the father. The court found the guardian ad litem recommended the three oldest children be placed in the permanent custody of JFS, the 6 year old and 2 year old girls be placed in the legal custody of the Moulton family and the 4 year old boy be placed in the legal custody of Henry family.
 {¶ 15} The trial court concluded none of the children could or should be placed with either parent within a reasonable time. The court found despite diligent reasonable efforts and planning by JFS to remedy the problems which caused the removal of the children, both parents had failed continually and repeatedly for a period of six months or more to substantially remedy the conditions causing removal. The court found JFS had offered supportive services for each element of the case plan. The court found both parents had demonstrated a lack of commitment towards their children and failed to provide an adequate home for them now, and will not be able to do so within a year of this litigation. The court ordered the three children be placed in the permanent custody of JFS and remain there until adoptive homes are secured.
 I. {¶ 16} In her first assignment of error, appellant argues JFS failed to prove by clear and convincing evidence the three oldest children cannot and should not be placed with appellant within a reasonable time.
 {¶ 17} R.C. 2151.414 (E) sets forth sixteen factors for the court to consider in determining whether the children can be returned to the parents within a reasonable time or should be placed with either parent. The statute provides:
 {¶ 18} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 19} "(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section2151.353 of the Revised Code;
 {¶ 20} "(3) The parent committed any abuse as described in section 2151.031 of the Revised Code against the child, caused the child to suffer any neglect as described in section 2151.03
of the Revised Code, or allowed the child to suffer any neglect as described in section 2151.03 of the Revised Code between the date that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody;
 {¶ 21} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 {¶ 22} "(5) The parent is incarcerated for an offense committed against the child or a sibling of the child;
 {¶ 23} * * *.
 {¶ 24} "(8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.
 {¶ 25} * * *
 {¶ 26} "(10) The parent has abandoned the child.
 {¶ 27} * * *
 {¶ 28} "(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.
 {¶ 29} "(15) The parent has committed abuse as described in section 2151.031 of the Revised Code against the child or caused or allowed the child to suffer neglect as described in section2151.03 of the Revised Code, and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety.
 {¶ 30} "(16) Any other factor the court considers relevant."
 {¶ 31} Appellant urges the children were found to be dependent and neglected based on the conditions in their home. The case plan required appellant to schedule and attend regular appointments with her neurologist, and follow all his recommendations relating to her multiple sclerosis. The case plan provided appellant should take all of the medications as prescribed and attend appointments to monitor her progress. Appellant was required to attend counseling to manage her emotions and her personal effectiveness. Appellant was to complete domestic violence treatment and follow all the recommendations, and attend parenting education classes. Appellant was required to complete all needed repairs to the home, maintain laundry and housekeeping on a weekly basis, and see that food is available for the children.
 {¶ 32} Appellant argues she took all the necessary steps to bring her home into compliance with the requirements. The home was repaired and thoroughly cleaned, and the washer and dryer were moved from the basement to the first floor.
 {¶ 33} Appellant argues she complied with her treatment for multiple sclerosis. Appellant concedes there was some delay in securing the prescribed medication, but argues the delay was not her fault, and eventually she did obtain the medication.
 {¶ 34} Appellant completed a psychological assessment, and the community mental health agency discharged her from further counseling. Appellant attended Harbor House to address the issue of domestic violence, although appellant testified she never engaged in any physical altercation with the children's father, from whom she is divorced.
 {¶ 35} JFS concedes its original intervention was because of the conditions of the home. However, after the agency had removed the children, the other problems surfaced. Case workers who observed the supervised visitations between appellant and the children testified appellant lacks consistent follow through in disciplining the children, and at least in regard to the early visits, she did not react to problematic behaviors. In fact, it took the efforts of two caseworkers to adequately supervise the visits.
 {¶ 36} Appellant had testified she wished to take all six children home with her to her three-bedroom home. Her plan was to put the boys in one room and the girls in another room while appellant would take the middle room. The case worker assigned to the family testified she did not think it was appropriate to place appellant in a position of having to protect the children from each other.
 {¶ 37} Judgments supported by competent, credible evidence going to all the essential elements of the case will not be reversed as against the manifest weight of the evidence, C.E.Morris Company v. Foley Construction Company (1978),54 Ohio St. 2d 279. We have reviewed the record, and we find there is sufficient competent and credible evidence contained therein to justify the court's finding by clear and convincing evidence the children cannot and should not be placed with their mother within a reasonable time.
 {¶ 38} The first assignment of error is overruled.
 II. {¶ 39} Appellant urges the court's finding it was in the best interest of the three oldest children to be placed in the permanent custody of JFS is against the manifest weight of the evidence.
 {¶ 40} R.C. 2151.414 (B) sets forth the various factors which a court should consider in determining the best interest of the children. Those factors are:
 {¶ 41} (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 42} (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 43} (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 44} (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 45} (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 46} Appellant urges the evidence established the children have strong bonds with appellant, their grandmother, and their aunt and uncle. Regarding the wishes of the minor children, appellant had filed a motion with the court to conduct and in-camera interview with the 10 year old boy. The court did not conduct the interview, but guardian ad litem's report indicates the five older children wished to return to their home and to maintain relationships with appellant and their siblings, and the youngest was too young to state a preference.
 {¶ 47} Appellant contests the court's finding she demonstrated no real understanding of the children's behaviors, or what it indicates. Appellant points out she had recognized the problems her 10 year old son was having, and voluntarily placed him in a group home before JFS became involved. She also urges although there are allegations of inappropriate sexual behavior, none of the incidents occurred when the children were in appellant's care.
 {¶ 48} We have reviewed the record, and we find there is sufficient, competent and credible evidence from which the trial court could determine the best interest of the 10 year old boy, the 8 year old boy, and the seven year old girl was best served by granting permanent custody to JFS.
 {¶ 49} The second assignment of error is overruled.
 III. {¶ 50} In her third assignment of error, appellant argues the permanent custody motion was untimely, because it was not filed within 30 days prior to the annual review as required by R.C.2151.415. The initial complaint was filed on July 12, 2004, and the annual review was scheduled for June 22, 2005. Thirty days prior to the review would have been May 22, 2005, but agency did not file its motion for permanent custody until May 31, 2005.
 {¶ 51} Both appellant and JFS cite us to In Re: YoungChildren (1996), 76 Ohio St. 3d 632. In Young, the Supreme Court found the passing of the statutory time period, the so-called "sunset date", does not divest juvenile courts of jurisdiction to enter dispositional orders, and a juvenile court must assess each situation on its merits. The court found when the sunset date has passed without a filing, and the problems that led to the original grant of temporary custody have not been resolved or sufficiently mitigated, the court has the discretion to make a dispositional order in the best interest of the children, Young at 638.
 {¶ 52} Pursuant to Young the trial court had discretion to make dispositional orders for these children, and was not required to dismiss the motion and return the children to appellant.
 {¶ 53} The third assignment of error is overruled.
 IV. {¶ 54} In her fourth assignment of error, appellant urges the court erred in finding JFS put forth a good-faith and diligent effort to rehabilitate the family situation. JFS had the burden of presenting evidence of the efforts it took to assist appellant in meeting the requirements of her case plan.
 {¶ 55} The court found JFS had provided supportive services for each element of the case plan to assist appellant in completing the case plan. The record contains evidence of the agency's involvement with appellant. The case plans outlined how the social worker and/or service team would assist the family. The guardian ad litem's report also discusses the agency's efforts to provide appellant an opportunity for improvement of parenting skills on an individualized basis.
 {¶ 56} We find the trial court did not err in determining JFS made reasonable efforts to reunite this family.
 {¶ 57} The fourth assignment of error is overruled.
 V. {¶ 58} In her fifth assignment of error, appellant urges the court erred in granting legal custody of the three youngest children to other persons. Appellant cites us to In Re: Perales
(1977), 52 Ohio St. 2d 89, for the proposition the court was required to find appellant was unsuitable before awarding custody of the child to another party.
 {¶ 59} We find appellant's reliance on Perales is misplaced. In the later case of In Re: Hockstok,98 Ohio St. 3d 238, 2002-Ohio-7208, the Supreme Court explained Perales
involved a dispute between a parent and a non-parent. The court found the overriding principle in a custody case between a parent and a non-parent is the parents' fundamental liberty interest in the care, custody, and management of their children, Hockstok
at paragraph 16, citations deleted. This is not a custody action between a parent and a non-parent.
 {¶ 60} We find the trial court did not err in awarding legal custody of the three youngest children to other families.
 {¶ 61} The fifth assignment of error is overruled.
 {¶ 62} For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, of Tuscarawas County, Ohio, is affirmed.
By Gwin, J., Wise, P.J., and Hoffman, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Juvenile Division, of Tuscarawas County, Ohio, is affirmed. Costs to appellant.