OPINION
{¶ 1} Appellant, J.P., appeals the decision of the Butler County Court of Common Pleas, Juvenile Division, finding that his child, A.P., was a dependent child. We affirm the juvenile court's decision.[1]
 {¶ 2} Appellant and his fiancé, Christina Gannon, lived together with four children. Gannon was the natural mother of two of the children, who had different fathers, neither being appellant. Appellant and Gannon were the natural parents of one of the children. Appellant was the natural father of the other child, A.P., whose natural mother was not Gannon.
 {¶ 3} In January 2005, appellant, Gannon, and several friends went to a local restaurant and bar where they ate dinner and consumed numerous alcoholic drinks. The group returned to the home of appellant and Gannon around 11:00 p.m. The four children who resided there, including A.P., were asleep at the time. Gannon's 14-year-old brother had been babysitting the children.
 {¶ 4} At some point, appellant left to take one of the couple's friends home. When appellant returned to the couple's residence about 2:00 a.m., he and Gannon became embroiled in an argument. During the argument, appellant stabbed Gannon with a knife. Both parties were highly intoxicated, and neither party could later recall any details of the argument or the stabbing. At the adjudication hearing, appellant testified that he recalled seeing Gannon "screaming and being on the ground bleeding." At that point, he drove Gannon to the hospital. Gannon spent six days in the hospital, including four in the intensive care unit with a collapsed lung, before recovering.
 {¶ 5} Appellant was arrested at the hospital, charged with felonious assault and domestic violence, and taken to jail.[2] While appellant and Gannon were at the hospital, Gannon's 14-year-old brother continued to watch the four children. An adult friend of the couple, who had been temporarily residing in the home, also watched the children. The next day, the fathers of two of the children picked up their children, Gannon's stepmother picked up the natural child of appellant and Gannon, and appellant's father picked up A.P. Appellant's father has cared for A.P. since that day.
 {¶ 6} A few days after the stabbing, the Butler County Children Services Board ("BCCSB") filed a complaint in the juvenile court alleging that A.P. was a dependent child. After an adjudication hearing in June 2005, the juvenile court determined that A.P. was a dependent child. The court found as follows: "While there was no evidence presented that father has in any way endangered * * * [A.P.] to this point, the physical evidence (the knife), the egregiousness of father's actions, and father's lack of memory of the incident due to his extreme inebriation does warrant a finding that the child is dependent, in order to prevent the risk of recurrence of such violence or inebriation which could place * * * [A.P.] at risk in the future." The court granted temporary custody of A.P. to appellant's father.
 {¶ 7} Appellant now appeals, assigning two errors.
 {¶ 8} Assignment of Error No. 1:
 {¶ 9} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANTA-PPELLANT WHEN IT REFUSED TO DISMISS THE COMPLAINT FOR FAILURE TO CONDUCT THE ADJUDICATORY AND DISPOSITION HEARINGS WITHIN THE PROPER STATUTORY TIME FRAMES."
 {¶ 10} In this assignment of error, appellant asserts that the juvenile court did not hold the adjudication hearing within 30 days of the filing of BCCSB's complaint, nor was there a dispositional hearing within 90 days of the filing of the complaint, as required by statute. According to appellant, the court's failure to follow statutory requirements should have resulted in the dismissal of the case.
 {¶ 11} R.C. 2151.28(A)(2) states that when a complaint alleges abuse, neglect, or dependency, the adjudicatory hearing "shall be held no later than thirty days after the complaint is filed." The statute allows an extension of that period so that a party can obtain counsel. R.C. 2151.28(A)(2)(a). The statute also allows an extension in order to obtain service on all parties, or to obtain necessary evaluations. R.C. 2151.28(A)(2)(b). However, the statute states that "the adjudicatory hearing shall not be held later than 60 days after the date on which the complaint was filed." Id.
 {¶ 12} R.C. 2151.28(B)(3) states that "in no case shall the dispositional hearing be held later than ninety days after the date on which the complaint was filed." Juv.R. 34(A) imposes the same 90-day requirement.
 {¶ 13} A party may waive the right to an adjudication hearing within the time period stated in R.C. 2151.28(A)(2) and a disposition hearing within the time period stated in R.C.2151.28(B)(3). An implicit waiver occurs when a party fails to move for dismissal when it becomes the party's right to do so, or when the party assists in the delay of the hearing. See In theMatter of Bailey D. (Apr. 17, 1998), Lucas App. No. L-96-363, 1998 WL 196287, *2, citing In re Kutzli (1991),71 Ohio App.3d 843, 846; In the Matter of N.B. (Apr. 15, 1996), Butler App. Nos. CA95-02-031, CA95-03-056, and CA95-06-017, 1996 WL 174546, *1.
 {¶ 14} BCCSB filed its complaint alleging dependency on January 20, 2005. On January 21, 2005, the juvenile court held a shelter care hearing, at which it granted temporary custody of A.P. to appellant's father. The court scheduled a pretrial hearing for March 11, 2005.
 {¶ 15} At the March 11, 2005 pretrial hearing, appellant's counsel stated the following when September 2005 was suggested as a possible time for the adjudication hearing: "Let's just have an adjudication; I don't want to put it off. Well, it would have been nine (9) months * * * [to] a year for adjudication. That's not in compliance with the statute of law." Later in the hearing, appellant's counsel stated the following: "I do not consider nine (9) months a reasonable limit. This case was filed in January; September's nine (9) months. How about June, which would be six (6) months, which seems to me to be a long time too[?]" The court subsequently asked appellant's counsel if June 29, 2005 would be an acceptable date for the adjudication hearing. Appellant's counsel responded as follows: "Yeah, I'll make that work Your Honor." The court scheduled a pre-trial hearing for June 3, 2005 and the adjudication hearing for June 29, 2005.
 {¶ 16} On the day of the June 29, 2005 hearing, appellant's counsel, who was not the same counsel as appellant's counsel at the earlier hearings, filed a motion asking the juvenile court to dismiss the case due to the lack of timeliness of the adjudication hearing. The court denied the motion, noting that appellant's counsel had not filed the motion prior to seven days before the hearing.
 {¶ 17} After reviewing the record, we find that appellant implicitly waived his right to an adjudication hearing and a dispositional hearing within the applicable statutory time periods. Appellant's counsel was aware that the June 29, 2005 hearing date was after the expiration of the applicable statutory time periods, yet agreed to that date at the March 11, 2005 pre-trial hearing. Further, the record does not show that appellant took issue with the June 29, 2005 date at the June 3, 2005 pretrial hearing. The record indicates that appellant did not move for dismissal when it became his right to do so, but rather waited until the day of the adjudication hearing to raise the issue. Under such circumstances, we find waiver. See BaileyD., 1998 WL 196287 at *2; N.B., 1996 WL 174546 at *1.
 {¶ 18} Additionally, appellant did not file his motion in compliance with Juv.R. 22(E). That rule requires that all prehearing motions, except for motions to determine whether a child is eligible to receive a sentence as a serious youthful offender, be filed by the earlier of: "(1) seven days prior to the hearing, or (2) ten days after the appearance of counsel." As previously stated, appellant did not file his motion to dismiss until the day of the hearing.
 {¶ 19} Based on the foregoing discussion, we find no error by the juvenile court in refusing to dismiss the case. Appellant waived his right to an adjudication hearing and a dispositional hearing within the applicable statutory time periods, and failed to file his motion to dismiss in compliance with Juv.R. 22(E). Accordingly, we overrule appellant's first assignment of error.
 {¶ 20} Assignment of Error No. 2:
 {¶ 21} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANTA-PPELLANT WHEN IT ADJUDICATED THE CHILD TO BE A DEPENDENT CHILD."
 {¶ 22} In this assignment of error, appellant argues that the juvenile court erred in finding A.P. to be a "dependent child" under R.C. 2151.04(C). In support of his argument, appellant asserts that A.P. was "not present for or aware of" the stabbing incident, and that A.P. received proper care throughout the time surrounding the incident.
 {¶ 23} A trial court's determination of dependency must be supported by clear and convincing evidence. See R.C.2151.35(A)(1); Juv.R. 29(E)(4). Clear and convincing evidence is that which will produce in the trier of fact a firm belief or conviction as to the facts sought to be established. In reAment (2001), 142 Ohio App.3d 302, 307. An appellate court's review of a trial court's dependency determination "is limited to whether sufficient credible evidence exists to support the trial court's determination." Ament at 307, citing In re PieperChildren (1991), 74 Ohio App.3d 714, 722.
 {¶ 24} R.C. 2151.04(C), the section under which BCCSB brought its dependency action, and the section under which the juvenile court found dependency, states as follows:
 {¶ 25} "`[D]ependent child' means any child: * * *
 {¶ 26} "(C)Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]"
 {¶ 27} "The determination that a child is dependent requires no showing of fault on the parent's part." In re Bolser (Jan. 31, 2000), Butler App. Nos. CA99-02-038 and CA990-3-048, 2000 WL 146026, *4. Rather, the focus is solely on the child's condition or environment, and whether the child was without adequate care or support. See Ament, 142 Ohio App.3d at 307. However, a court may consider a parent's conduct insofar as it forms part of the child's environment. In re Alexander C., 164 Ohio App.3d 540,2005-Ohio-6134, ¶ 51, citing In re Burrell (1979),58 Ohio St.2d 37, 39. A parent's conduct is significant if it has an adverse impact on the child sufficient to warrant state intervention. In re Ohm, Hocking App. No. 05CA1,2005-Ohio-3500, ¶ 21, citing Burrell at 39.
 {¶ 28} While the child's present "condition or environment" is the focus of a dependency determination, "the law does not require the court to experiment with the child's welfare to see if * * * [the child] will suffer great detriment or harm." In reBurchfield (1988), 51 Ohio App.3d 148, 156. "[T]he child doesnot first have to be put into a particular environment before a court can determine that * * * [the] environment is unhealthy or unsafe." (Emphasis sic.) Id., citing In re Campbell (1983),13 Ohio App.3d 34, 36.
 {¶ 29} The courts of appeals in Burchfield and Campbell
affirmed dependency findings under R.C. 2151.04(C) where, as in this case, prior conduct by a parent had not yet adversely impacted the children. In Burchfield, the Fourth District Court of Appeals affirmed the trial court's dependency finding for two children whose father had sexually molested their older sibling. Although the evidence in the record did not indicate that the father had sexually molested the two younger children, the court found the dependency finding proper because of the clearly unsafe environment in the children's home. See Burchfield at 156-157.
 {¶ 30} In Campbell, this court affirmed a trial court's dependency finding under R.C. 2151.04(C) as to a newborn child prior to that child's release from the hospital. The newborn's mother had been diagnosed as mentally retarded, and had stated five weeks before the birth that she would throw her baby in the river. Campbell, 13 Ohio App.3d at 35. Further, the two-room apartment maintained by the mother and the child's father had no kitchen facilities, was extremely dirty, and was not appropriate for a newborn baby. Id. In upholding the dependency determination, this court stated that the trial court should not have been forced to "experiment with the health and safety" of the child. Id. at 36.
 {¶ 31} The Fifth District Court of Appeals in In the Matterof Burns (June 26, 2000), Licking App. Nos. 99CA124 and 99CA125, 2000 WL 873668, also affirmed a trial court's dependency finding, though the record did not show that prior conduct by the children's parents had yet adversely affected the children. InBurns, the children's parents kept a large amount of pornography in the home, some of which was in close proximity to the children's videotapes. Id. at *5. Further, the parents and the children's 15-year-old brother engaged in illegal sexual activity with a 15-year-old girl in the home. Id. The record did not show that the children had witnessed the illegal sexual activity for which their parents were later indicted. See id. at *6. However, the court affirmed the dependency finding because it was clear that state intervention was needed, given the environment in which the children were living. See id. at *5-6.
 {¶ 32} As appellant asserts, the record does not show that A.P. witnessed appellant's excessive drinking and violent behavior, or that appellant's actions had a specific adverse effect on A.P. Nevertheless, as the courts found in Burchfield,Campbell, and Burns, we find sufficient, credible evidence supporting the juvenile court's determination that A.P.'s "condition or environment" warranted state intervention. Appellant was the sole party legally responsible for A.P.'s care. Appellant had legal custody of A.P., whose natural mother had not been granted parenting time. Therefore, A.P.'s environment consisted of being in the care of appellant, who had committed an extremely violent act against his fiancé, and who could not recall the details of the incident due to excessive alcohol consumption. Given the serious nature of the stabbing incident and the detrimental effect appellant's behavior could have on A.P., we find sufficient support for the juvenile court's conclusion that A.P.'s environment warranted state intervention.
 {¶ 33} We find this case distinguishable from In re C.M. andC.W., Brown App. Nos. CA2003-02-003 and CA2003-02-004,2004-Ohio-2294, cited by appellant. In that case, this court reversed a trial court's dependency finding. The dependency finding was largely based on the conduct of the children's mother, who arrived intoxicated to help chaperone one of her children's school field trip. See id. at ¶ 10. The actions by appellant in this case were far more egregious than the mother's actions in C.M. and C.W. The violent nature of appellant's actions, coupled with appellant's alcohol abuse, posed a much greater concern than the mother's conduct in C.M. and C.W.
 {¶ 34} Another important distinction between C.M. and C.W.
and this case is that, in C.M. and C.W., the mother made specific arrangements for someone to care for her children when she could not properly do so. She made arrangements with the school to have her children taken to her mother's house following the field trip. See id. at ¶ 23. In this case, appellant and his fiancé did arrange for the fiancé's 14-year-old brother to watch the children while the couple went out with their friends. However, after the stabbing incident, the record does not show that appellant made arrangements for the care of A.P. Appellant testified that he did not "check on" A.P. before leaving for the hospital. Appellant also testified that, once at the hospital, he did not contact anyone about caring for A.P. Appellant testified that he "assumed" Gannon's 14-year-old brother and the adult friend staying with them would "take care of that," and that "they would call somebody."
 {¶ 35} Appellant also argues that "[p]erhaps the most telling evidence that * * * [A.P.] was not dependent" was BCCSB's decision to file a dependency complaint only as to A.P., and not as to the other three children who lived at the couple's home. Consistent with that assertion, the record does not indicate that BCCSB filed dependency complaints as to the other children. However, the record shows that A.P. was the only child for whom appellant alone was legally responsible to provide care. As previously stated, the record shows that appellant had legal custody of A.P., and that A.P.'s natural mother had not been granted parenting time with the child. The record indicates that each of the other children had at least one primary caregiver who had not committed a very violent act.
 {¶ 36} Regardless of BCCSB's inaction with respect to the other children, we must rule on the specific case before us, which is an appeal of the dependency determination as to A.P. Based on our analysis of the record, we find sufficient, credible evidence supporting the juvenile court's determination that A.P. was a "dependent child." Accordingly, we overrule appellant's second assignment of error.
 {¶ 37} Judgment affirmed.
Walsh and Young, JJ., concur.
[1] Pursuant to Loc.R. 6(A), we have sua sponte removed this appeal from the accelerated calendar.
[2] The record shows that appellant pled no contest to, and was convicted of, one count of domestic violence in the Middletown Municipal Court.