OPINION *Page 2 
{¶ 1} Appellant, Nancy (Angler) Allen, filed this appeal from the judgment entered in the Muskingum County Court of Common Pleas, Juvenile Court Division, which terminated all parental rights, privileges and responsibilities of the parents, with regard to the minor children, James Angler, Matthias Allen, and Alexia Allen, and ordered that permanent custody of the minor children be granted to Muskingum County Children's Services, (hereinafter, "Children's Services").
 {¶ 2} This appeal is expedited, and is being considered pursuant to App.R.11.2(C). The relevant facts leading to this appeal are as follows:
 STATEMENT OF THE FACTS AND CASE {¶ 3} This appeal pertains to the permanent custody disposition of three children, James Angler, whose date of birth is July 19, 1999, Matthias Allen whose date of birth is February 19, 2003, and Alexia Allen whose date of birth is April 17, 2004. Appellant, Nancy Allen, is the natural mother of the children. Herman Craig is the natural father of James Angler. Matthias Allen is the natural father of Matthias Allen Jr. and Alexia Allen. Helen Tennant is the maternal grandmother of the three children.
 {¶ 4} This matter has been before the trial court for nearly six years. The case began on April 11, 2000, after James, who was not yet nine months old, was hospitalized for a spiral fracture of his right femur. He was removed from his mother's custody and placed in foster care. On April 12, 2000, Children's Services filed an abuse complaint pursuant to R.C. 2151.031(C). On June 26, 2000, appellant stipulated to a dependency finding, the case plan was approved and adopted, James was returned to *Page 3 
his mother's custody with protective supervision and a no contact order was issued for mother's physically abusive live-in boyfriend, Jason Farson.
 {¶ 5} In September of 2000, without the involvement of Children's Services, Appellant voluntarily placed James with Theresa Beach. On October 2, 2000, Children's Services moved to modify James' disposition. On or about December 5, 2000, the trial court granted Theresa Beach temporary custody of James.
 {¶ 6} On October 22, 2002, appellant filed a pro se "agreed" motion for change of residential parent and legal custodian. On October 23, 2002, the court made a referral to Children's Services requesting an investigation and written recommendation for placement. On December 5, 2002, in a letter filed with the court, Children's Services did not recommend a change in placement. Specifically Children's Services expressed concerns that appellant had failed to complete any part of her original case plan, subjected James to chronic neglect, suffered from a conduct disorder, and was unable to provide stable, clean housing. As a result, James remained in the temporary custody of Theresa Beach. It further appears that the dependency case was reopened and both appellant and Matthias Allen, voluntarily agreed to engage in a case plan with a goal toward reunification. On March 13, 2003, the agreed motion for change of legal custody was dismissed by the court.
 {¶ 7} On October 29, 2003, the agreed motion for change of custody was again filed by appellant. On February 19, 2003, Matthias Allen Jr. was born. On April 17, 2004, Alexia was born. On December 22, 2003, the court returned custody of James to appellant with protective supervision. On October 15, 2004, Children's Services moved *Page 4 
the court for an extension of protective supervision and the hearing was scheduled for November 22, 2004.
 {¶ 8} From February 2003 until November 2004, the appellant and Matthias Allen and their children lived in approximately nine separate locations. Each residence was full of clutter, dog feces, spoiled food and other hazardous conditions. In each case the family was eventually evicted and homeless. In times of homelessness the children lived with their grandmother, Helen Tennant, at the Salvation Army or with appellant's friends.
 {¶ 9} On December 15, 2004, after the children were removed from filthy and hazardous living conditions, Children's Services filed a complaint for neglect and dependency, pursuant to R.C. 2151.03(A)(3) and2151.04(C), for both Matthias and Alexia, asking for temporary custody of the children. The complaint stated that the parents had failed to comply with their case plan, were unable to provide a safe and stable home environment, and were unwilling to avail themselves of services. Also, on December 15, 2004, Children's Services moved to modify James' disposition, requesting temporary custody to Helen Tennant or in the alternative to Children's Services.
 {¶ 10} On December 20, 2004, the trial court made an interim order placing the children in the temporary custody of Helen Tennant with protective supervision. The trial court further ordered supervised visitation and psychological evaluations for both appellant and Matthias Allen.
 {¶ 11} In January of 2005, Helen Tennant was hospitalized for pneumonia. Additionally, Helen suffered from asthma and a severe seizure disorder. Helen refused *Page 5 
to follow medication guidelines and suffered seizures several times a day. Due to Helen's medical conditions, in February of 2005, James, Matthias, and Alexia were moved to relative placement with Rachel Wood. Subsequently, on July 1, 2005, the court filed an order formally placing the children in the temporary custody of Rachel Wood.
 {¶ 12} At a pre-hearing conference on March 10, 2005, the parties and their counsel, including Matthias Allen, the Attorney Guardian Ad Litem, the maternal grandmother (Helen Tennant) and appellant executed a joint time waiver acknowledging that they understood that, pursuant to Ohio Revised Code Section 2151.35(B)(1) and Juvenile Rule 34(A), any Dispositional Hearing must be held within ninety (90) days from the date of the filing of the complaint and that by signing the waiver they agreed to allow the court to conduct the Dispositional Hearing after the ninetieth day from the filing of the complaint. No objections to the waiver were raised by any party to the proceeding.[1]
 {¶ 13} In October of 2005, Helen's son, Kevin Angler, who was seventeen years of age, was placed by Children's Services into Helen's home. Kevin had previously been placed in foster care due to Helen's neglect and drug use. Kevin was described as having a history of violent and aggressive behaviors toward other children and caregivers. After the placement, Helen Tennant was evicted from her residence and remained homeless at the time of the permanent custody hearing.
 {¶ 14} In December of 2005, Rachel Wood determined that she could no longer care for the children and the children were placed in three separate foster homes. *Page 6 
 {¶ 15} On December 8, 2005, Children's Services amended the original complaint for Matthias and Alexia to request permanent custody as a disposition and moved to modify the disposition for James to permanent custody.
 {¶ 16} In preparation for the permanent custody hearing the Attorney Guardian Ad Litem became aware of James' desire to return to his mother's custody. The Guardian believed that James' wishes were not in his best interest and requested the appointment of counsel to represent James' legal interests. The permanent custody hearing was again continued for the appointment of counsel for James.
 {¶ 17} From February 1, 2005, until June of 2006, the hearings on the original complaints and on the Motion to Modify disposition, as amended subsequently to include a request for the disposition of permanent custody, were continued by the court. The continuances were perpetuated by the need to complete the psychological evaluations and to appoint counsel for James.
 {¶ 18} On April 25, 2006, appellant moved to regain custody of her children. On May 24, 2006, Helen Tennant also moved for custody of the children. The trial court ordered appellant and Helen Tennant to have updated psychological evaluations. On June 13, 2006, counsel was appointed for James.
 {¶ 19} On September 14, 2006, the trial court held a consolidated hearing on appellant and Helen Tennant's motions for custody, Children's Services permanent custody complaint as to Matthias and Alexia and Children's Services Motion to Modify James' disposition to permanent custody. Fathers, Matthias Allen and Herman Craig, did not appear. *Page 7 
 {¶ 20} After the adjudication phase, the trial court found Matthias and Alexia to be dependent children.
 {¶ 21} The trial court then heard evidence in the dispositional phase regarding the three children. During the dispositional phase the trial court heard evidence as to whether each of the children could be placed with the child's parents within a reasonable time or whether each of the children should be placed with either parent and whether permanent custody was in each of the children's best interest.
 {¶ 22} Witnesses in the dispositional phase included Jill Johnson, a living skills instructor for Six County,[2] Viva Thomas, an anger management counselor for Six County, Becky Norris, a family stability worker for Children's services, Karen Sheppard, a family stability worker for Children's Services, Laurie Cunningham, a caseworker for Children's Services, Christina Starling, a family stability worker for Children's Services, and Cathy Loucks, a caseworker for Children's Services. Additional evidence, admitted without objection and considered by the trial court, included the deposition of psychologist, Dr. Beazley, photographs of the children's residences, and the Guardian Ad Litem's Report.
 {¶ 23} Jill Johnson testified that she had worked with appellant beginning in July of 2006. Her areas of concern included housing, cleaning, cooking, organizing, and employment. Ms. Johnson testified that appellant was not receptive or willing to participate in the program. She further stated that appellant was unable to maintain a *Page 8 
clean home, violated the terms of her residential agreement with Six County and was repeatedly hospitalized for suicidal concerns.
 {¶ 24} Viva Thomas testified that she provided appellant with anger management therapy which concentrated on appellant's ability to handle day-to-day frustrations. Ms. Thomas stated that appellant did not complete anger management therapy and made minimal progress in achieving anger management goals. Ms. Thomas further stated that the symptoms which were the focus of appellant's therapy could impair her ability to parent.
 {¶ 25} Becky Norris and Karen Shepard worked with appellant and Matthias Allen as family stability workers. Ms. Norris testified that she was unsuccessful in getting the parents to engage in parenting classes. Ms. Norris stated that during most of her home visits she observed clutter, dog feces on the floors and dried spoiled food in the kitchen and bathroom. There were also concerns of domestic violence in the home. Ms. Norris further testified that appellant had disclosed that Helen Tennant brought a stranger into appellant's Six County home and Helen had engaged in sex in exchange for money. Ms. Sheppard stated that appellant had earned a parenting certificate for watching four parenting videos, but that there had been no noticeable change in appellant's parenting skills.
 {¶ 26} Cathy Loucks had been involved with appellant and her family since 1982. She testified that appellant was unable to maintain a safe home and employment. She stated that appellant's income was primarily derived from Social Security and food stamps. She stated that appellant had received substantial amounts of financial assistance and daily necessities from Children's Services. She also stated that *Page 9 
appellant had a poor history of participating in agency supervised visitation with her children while they were in foster care.
 {¶ 27} Ms. Loucks testified that due to violence concerns between the siblings, the children were moved to separate foster placements. She stated that the children are bonded to their foster families and that each of the families has expressed a desire to adopt the children. She testified that the children are bonded to each other and that the foster families agreed to maintain the sibling relationships through visitation.
 {¶ 28} In his deposition, Dr. Beazely testified that he diagnosed appellant as having a "personality disorder not otherwise specified with borderline and antisocial features". He stated that appellant has a long history of mental health problems and a history of social instability which included unstable housing, a pattern of unemployment and financial problems, and marital difficulties. He testified that her efforts to cooperate with Children's Services were superficial and that she was highly resistant to services. He also stated that appellant minimized the problems, externalized responsibility and blamed others for the loss of her children. Finally, Dr. Beazley testified, that in his professional opinion, he did not believe that appellant could offer her children a stable home environment. He further testified that in his opinion Helen Tennant was not able to provide a safe and stable home environment.
 {¶ 29} In a written report, the Guardian Ad Litem stated that a grant of permanent custody to Muskingum County Children's Services was in the children's best interest.
 {¶ 30} After hearing the evidence in the dispositional phase the trial court took the matter under advisement. On September 26, 2006, via judgment entry, the trial court granted permanent custody of James Angler, Matthias Allen and Alexia Allen to *Page 10 
the Muskingum County Department of Children's Services. It is from this decision that Mother, Nancy Allen, now seeks to appeal assigning the following errors for review:
 {¶ 31} "I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND MATERIALLY PREJUDICED APPELLANT WHEN IT RENDERED A FINAL DISPOSITIONAL ORDER GRANTING PERMANENT CUSTODY OF ALEXIA ALLEN AND MATHIAS ALLEN TO MCCS PRIOR TO CONDUCTING AN ADJUDICATORY HEARING ON BOTH CHILDREN.
 {¶ 32} "II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND MATERIALLY PREJUDICED APPELLANT WHEN IT CONDUCTED A DISPOSITIONAL HEARING BEYOND THE TIME LIMITS SET FORTH IN R.C. 2151.35.
 {¶ 33} "III. THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND MATERIAL [SIC] PREJUDICED APPELLANT WHEN IT RENDERED A FINAL DISPOSITIONAL ORDER GRANTING PERMANENT CUSTODY TO MCCS WHEN THE CHILDREN HAD NOT BEEN IN THE TEMPORARY CUSTODY OF ONE OR MORE PUBLIC SERVICES AGENCIES OR PRIVATE CHILD PLACING AGENCIES FOR TWELVE OR MORE MONTHS OF A CONSECUTIVE TWENTY-TWO MONTH PERIOD.
 {¶ 34} "IV. THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND MATERIAL [SIC] PREJUDICED APPELLANT WHEN IT RENDERED A FINAL DISPOSITIONAL ORDER GRANTING PERMANENT CUSTODY TO MCCS WHEN THE CHILDREN'S CURRENT LEGAL CUSTODIAN, RACHEL WOODS, WAS NOT *Page 11 
MADE A PARTY TO THE PROCEEDING AND WAS NOT SERVED WITH MCCS' MOTION SEEKING PERMANENT CUSTODY.
 {¶ 35} "V. THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND MATERIAL [SIC] PREJUDICED APPELLANT WHEN IT RENDERED A FINAL DISPOSITIONAL ORDER GRANTING PERMANENT CUSTODY TO MCCS AFTER THE EXPIRATION OF THE STATUTORY TWO-YEAR SUNSET DATE IN VIOLATION OF APPELLANT'S DUE PROCESS."
 I {¶ 36} In the first assignment of error appellant argues that the trial court erred in granting permanent custody of Matthias and Alexia to Children's Services without first making an abuse, neglect or dependency adjudication, thereby making the permanent custody disposition void for lack of jurisdiction. We disagree.
 {¶ 37} There are two ways that an authorized agency may seek to obtain permanent custody of a child under Ohio law. The agency may first obtain temporary custody and then subsequently file a motion for permanent custody, or the agency may request permanent custody as part of its original abuse, neglect, or dependency complaint. See R.C. 2151.413, R.C. 2151.27(C), and 2151.353(A)(4). Pursuant to R.C. 2151.35 and Juv.R.29 and 34, proceedings involving the termination of parental rights must be bifurcated into separate adjudicatory and dispositional hearings. See, In re Baby Girl Baxter (1985), 17 Ohio St.3d 229,479 N.E.2d 257. However, a dispositional hearing may be heard immediately after the adjudication hearing. R.C. 2151.35(B)(1). *Page 12 
 {¶ 38} In this case, the Department filed a motion seeking permanent custody of Matthias and Alexia as the initial disposition in an abuse, neglect and dependency complaint, and permanent custody of James as a modification of a prior disposition.
 {¶ 39} The record reflects that, in 2000, James was adjudicated dependent. The permanent custody hearing regarding Matthias Jr. and Alexia was bifurcated into an adjudication phase and a dispositional phase. After the adjudication phase, the trial court found Matthias and Alexia to be dependent children specifically stating as follows: "based upon the evidence, the Court finds that the children are, or were dependent children at the time of the filing of the complaint in December of 04." (Transcript of Proceeding at page 95). The court then held the dispositional phase as to all three children.
 {¶ 40} For these reasons, we find that the trial court complied with R.C. 2151.35 and Juv.R.29 and Juv.R.34. Accordingly, appellant's first assignment of error is not well taken and is hereby overruled.
 II {¶ 41} In the second assignment of error, appellant argues that the trial court erred to appellant's prejudice, when it failed to observe the time requirements of section R.C. 2151.35. We disagree.
 {¶ 42} R.C. 2151.35(B)(1) states in pertinent part as follows:
 {¶ 43} "(B)(1) If a court at an adjudicatory hearing determines that a child is an abused, neglected, or dependent child, the court shall not issue a dispositional order until after the court holds a separate dispositional hearing. The court may hold the dispositional hearing for an adjudicated abused, neglected, or dependent child *Page 13 
immediately after the adjudicatory hearing if all parties were served prior to the adjudicatory hearing with all documents required for the dispositional hearing. The dispositional hearing may not be held more than thirty days after the adjudicatory hearing is held. The court upon the request of any party or the guardian ad litem of the child may continue a dispositional hearing for a reasonable time not to exceed the time limits set forth in this division to enable a party to obtain or consult counsel. The dispositional hearing shall not be held more than ninety days after the date on which the complaint in the case was filed.
 {¶ 44} "If the dispositional hearing is not held within the period of time required by this division, the court, on its own motion or the motion of any party or the guardian ad litem of the child, shall dismiss the complaint without prejudice." R.C. 2151.35(B)(1).
 {¶ 45} Although R.C. 2151.35(B)(1) states that a dispositional hearing shall be held within 90 days of the filing of a compliant, the time period may be waived. "An implicit waiver occurs when a party fails to move for dismissal when it becomes the party's right to do so, or when the party assists in the delay of the hearing." In re A.P., Butler App. No. CA 2005-10-425, 2006-Ohio-2717; See, also, In re Kutzli (1991), 71 Ohio App. 3d 843, 846, 595 N.E.2d 1026; In re Keller,(Dec. 8, 1994), Cuyahoga App. No. 66451, unreported.; In re Kimble, Harrison App. No. 99 517 CA, 2002-Ohio-2409; In re Bailey D., (April 17, 1998), Lucas App. No. L-96-363, unreported; In re Chapman, (April 10, 1998) Ashtabula App. No. 97-A-0001, unreported. Furthermore, failure to conduct a dispositional hearing within the 90 day time limit does not divest the trial court of jurisdiction over the proceeding. In re J.J., Cuyahoga App. No. 86276, 2007-Ohio-535; *Page 14 In re Young (1996), 76 Ohio S.3d 632, 660 N.E.2d 1140; State ex rel Howard v. Ferret, (February 10, 1994), Cuyahoga App. No. 66559, unreported; In re Kutzli, Supra.
 {¶ 46} This assignment of error pertains to the permanent custody disposition of Matthias and Alexia. In, In re Chambers, this Court addressed the importance of the strict compliance with R.C. 2151.35 and found that a trial court abused its discretion in failing to grant a motion to dismiss where the trial court failed to hold a dispositional hearing within ninety days of the filing of a compliant. Although the facts in Chambers are distinguishable from the case sub judice, this Court still believes that the statute is meant to promote expeditious results in abuse, neglect and dependency cases. Specifically, in 1989, the legislature, as proponents of permanency planning for children, passed Senate Bill 89. The legislation's purpose was to limit delays in abuse, neglect and dependency prosecutions by imposing strict time requirements where none had previously existed. These time restrictions were meant to perpetuate fair procedures for parents while ensuring prompt dispositions resulting in safe and stable environments for children. In this case, as in others, albeit within the limit of the laws, the utilization of waivers serves to overcome the original legislative purpose of the statute and interminably disrupt the path to permanency planning. This case is an example of the effect of lengthy delays, perpetuated by waivers and continuances, interfering with the permanency goals.
 {¶ 47} The record reflects that on March 10, 2005, at or near the ninetieth day after the abuse, neglect and dependency complaint for Matthias and Alexia was filed, the parties executed a waiver of the 90 day time requirement. The waiver did not specify any future dispositional date. Additionally, multiple continuances were granted for the *Page 15 
completion of court ordered psychological evaluations and for the appointment of counsel for James. Throughout these procedures, appellant failed to object or otherwise move to dismiss for failure to abide by the time limitations set forth in R.C. 2151.35(B)(1). Although this Court has concerns over such procedures, the appellant, both by execution of the waiver and failure to either object or move to dismiss the complaint, waived the ninety day requirement set forth in R.C.2151.35(B)(1).
 {¶ 48} For these reasons we find that appellant's third assignment of error lacks merit and is hereby overruled.
 III {¶ 49} Appellant argues in the third assignment of error that the trial court abused its discretion by granting permanent custody without first finding that the children had been placed in the temporary custody of one or more public children service agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period. We disagree.
 {¶ 50} Appellant seems to argue that the only manner in which permanent custody could have been granted in the case sub judice was in accordance with R.C. 2151.414(B)(1)(d) since R.C. 2151.414(B)(1)(a)(b) and (c) did not apply. R.C. 2151.414(B)(1)(d) provides that a court may grant permanent custody if the court determines that it is in a child's best interest to do so and if the child has been in the temporary custody of one or more children services agencies for twelve or more months of a consecutive twenty-two month period. Appellant argues that since the evidence did not establish the facts necessary to prove that the agency had custody for the requisite time period, then the award of permanent custody was error. *Page 16 
 {¶ 51} But, the trial court did not rely on R.C. 2151.414(B)(1)(d). It relied on R.C. 2151.414(B)(1)(a) by finding that the children cannot be placed with either parent within a reasonable time, and should not be placed with either parent. The specific findings of fact made by the trial court support an R.C. 2151.414(B)(1)(a) finding. And, the record supports the findings of fact made by the trial court.
 {¶ 52} In this case permanent custody of Matthias Jr. and Alexia was sought by Children's Services as part of the original complaint pursuant to R.C. 2151.353 and permanent custody of James was sought as a change of disposition pursuant to 2151.414. In both instances the trial court determined that the children could not be placed with their parents within a reasonable period of time or should not be placed with their parents. The trial court further determined that a grant of permanent custody was in the children's' best interest pursuant to several of the factors set forth in R.C. 2151.414.
 {¶ 53} After a child has been adjudicated abused, neglected or dependent and a public children's services agency files a motion for permanent custody as a change of a prior disposition or requests permanent custody as the initial disposition, the court may grant permanent custody of the child to the movant if the court determines in accordance with R.C. 2151.414(E) that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division R.C. 2151.414(D) that permanent custody is in the child's best interest. See R.C. 2151.353(A)(4) and R.C. 2151.414(B)(1)(a). It should be noted here that a complaint filed pursuant to 2151.353(A), which asks for permanent custody as the initial disposition after adjudication, does not set forth the "twelve in *Page 17 
twenty-two" finding as a factor which may be used by the trial court in granting permanent custody.
 {¶ 54} R.C. 2151.414(E) sets forth the factors a trial court must consider in determining whether a child cannot or should not be placed with either parent within a reasonable time. For the purposes of this appeal the pertinent sections are as follows:
 {¶ 55} (E) "In determining at a hearing * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with either parent within a reasonable period of time, the court shall consider all relevant evidence. If the court determines by clear and convincing evidence * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable period of time or should not be placed with either parent:
 {¶ 56} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties. *Page 18 
 {¶ 57} "* * *(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 {¶ 58} "* * * (16) Any other factor the court considers relevant."
 {¶ 59} A parent's past history is a factor which may be considered by the court as an indicator as to whether a child should be placed with a parent within a reasonable period of time. In other words, past history is likely to predict a recurrence of the situation which initially threatened the health and safety of the child. The law does not require a court to gamble with a child's welfare. In Re East (1972),32 Ohio Misc. 65, 69, 288 N.E.2d 343, 346.
 {¶ 60} Pursuant to R.C. 2151.414(D), in determining the best interest of a child, the court shall consider all relevant factors, including but not limited to the following:
 {¶ 61} "(1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 62} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 63} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period ending on or after March 18, 1999; *Page 19 
 {¶ 64} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; * * *"
 {¶ 65} The evidence showed that the respective fathers, Matthias Allen and Herman Craig, failed to successfully complete any portion of their case plans and failed to appear at the permanent custody hearing.
 {¶ 66} The record also reflects that, for more than six years, appellant failed to successfully complete parenting classes, and made minimal progress in developing appropriate parenting skills. Appellant failed to obtain or maintain employment. Appellant failed to complete anger management classes which were structured to provide her with coping strategies for healthy responses to daily parenting stresses. Appellant was repeatedly hospitalized for suicidal concerns and was diagnosed with personality disorders, which negatively impacted her ability to parent, but repeatedly failed to engage in mental health services. Appellant had a history of relationships with male partners who were physically abusive to James. On numerous occasions, appellant voluntarily transferred custody of her children to friends and relatives to such an extent that the children had marginal bonding with appellant for most of their young lives. Furthermore, appellant failed to consistently exercise visitation with her children when they were placed in the temporary custody of Children's Services. Finally, Appellant has a six year history of unsafe and hazardous living conditions leading to repeated evictions and homelessness. *Page 20 
 {¶ 67} Additionally, relative placement with Helen Tennant, was not recommended due to the violent tendencies of her son and her inability to provide a safe home environment.
 {¶ 68} Furthermore, the Children's Services workers and Guardian Ad Litem support the grant of permanent custody to the agency and stated that permanent custody is in the children's best interest.
 {¶ 69} Accordingly, we find the that the trial court did not err in failing to make the finding that the children had been placed in the temporary custody of one or more public children service agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period. As to Alexis and Matthias' cases, it was not even a finding available to the court under R.C.2151.353(A)(4) to support the granting of permanent custody. As to James' case, there was another finding available to support the granting of permanent custody.
 {¶ 70} We further find the evidence to be substantial and credible, that the children cannot and should not be placed with any of the parents and that it is in the children's best interest to be provided with a safe and stable environment, which is only available through a grant of permanent custody to Muskingum County Children's Services.
 {¶ 71} Accordingly, Appellant's third Assignment of Error is not well taken and is hereby overruled. *Page 21 
 IV {¶ 72} Appellant argues in the fourth assignment of error that the trial court lacked jurisdiction to pursue permanent custody since Rachel Wood was not served with a copy of the permanent custody complaint. We disagree.
 {¶ 73} Although it is not entirely clear, it appears that appellant believes that Rachel Wood was a necessary party to this permanent custody action and therefore permanent custody can not be granted where a necessary party has not been properly served or included in the permanent custody proceeding. We disagree.
 {¶ 74} One may not challenge an alleged error committed against a non-appealing party absent a showing that the challenger has been prejudiced by the alleged error. In re D.H., Cuyahoga App. No. 82533,2003-Ohio-6478, citing In re Love (1969), 19 Ohio St. 2d 111,249 N.E.2d 794, and In re Cook (Oct. 8, 1998), Hancock App. No. 5-98-16, unreported. The mere assertion that a party was not served with proper notice does not divest a trial court of jurisdiction, unless prejudice can be shown. In re Young, (1996), 76 Ohio St.3d 632, 1996-Ohio-45,669 N.E.2d 1140.
 {¶ 75} In this case Rachel Wood, is not a party to this appeal. Furthermore, in December of 2005, Rachel Wood voluntarily gave all three children to Children's Services after determining that she could no longer provide for their care. We agree with appellant that there is no entry terminating Ms. Wood's custody. After the voluntary termination of temporary custody, Rachel Wood never became re-involved with the children. Rachel Wood is not a parent. And, no parent presented evidence at the permanent custody hearing regarding whether Rachel Wood would be an appropriate custodian for the children. *Page 22 
 {¶ 76} For these reasons, assuming arguendo that there was a failure to serve, the trial court did not lose jurisdiction to entertain the permanent custody complaints and motion. Furthermore, Appellant has not shown any personal prejudice in such alleged service failure and therefore has no standing to raise the issue.
 {¶ 77} For these reasons Appellant's fourth assignment of error lacks merit and is hereby overruled.
 V {¶ 78} Appellant states in the fifth assignment of error that the trial court erred when it rendered a final dispositional order granting permanent custody to Children's Services after the expiration of the statutory sunset date. We disagree.
 {¶ 79} R.C. 2151.353(F) states as follows:
 {¶ 80} "(F) Any temporary order issued pursuant to division (A) of this section shall terminate one year after the earlier of the date on which the complaint in the case was filed or the child was first placed into shelter care, except that upon a filing of a motion pursuant to section 2151.415 [2151.41.5] of the Revised Code, the temporary custody order shall continue and not terminate until the court issues a dispositional order under that section." This one year period may be extended in six month increments for a two year overall statutory limit. See R.C. 2151.41.5(D)(1) and (2). Thus, there is a "two year sunset date".
 {¶ 81} However, the passing of the statutory "sunset date" does not divest the juvenile court of jurisdiction to enter jurisdictional orders where the problems that led to the original involvement have not been resolved or sufficiently mitigated. In such a case, the court has continuing jurisdiction to make dispositional orders which are in the best *Page 23 
interest of the children. In re Young (1996), 76 Ohio St.3d 632,669 N.E.2d 1140, see also, In re Thornton Children, Tuscarawas App. No. 2006AP10003, 2006-Ohio-2519.
 {¶ 82} In the case sub judice, at the time of the permanent custody hearing, appellant had repeatedly failed to remedy the problems which led to Children's Services involvement and the removal of her children. Additionally, continuances of the dispositional hearings were perpetuated by appellant's waivers and continuances to complete her psychological evaluations. These extensions provided appellant with an opportunity to complete her case plan, which she did not use to her benefit. Accordingly, pursuant to In re Young, the trial court retained jurisdiction to make a final dispositional order of permanent custody.
 {¶ 83} For these reasons we find appellant's fifth assignment of error not well taken and hereby overruled.
 {¶ 84} The judgment of the Muskingum County Court of Common Pleas, Juvenile Court Division, is affirmed.
By: Edwards, J., Hoffman, P.J. and Delaney, J. concur.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Muskingum County Court of Common Pleas, Juvenile Court Division, is affirmed. Costs assessed to appellant.
[1] The time waiver specifically addressed the complaint for neglect and dependency as to Matthias and Alexia Allen filed on December 15, 2004. The time waiver was executed at, or near, the ninetieth day deadline for adjudication and disposition.
[2] Six County, Inc. provides treatment services. These services include employee assistance, sheltered employment, intensive outpatient treatment, resident services, and other innovative mental health services. Residential Resources, Inc., a wholly owned subsidiary of Six County, Inc., provides decent, affordable, independent living for adults with severe and persistent mental illness. Residents are not permitted to allow unapproved persons to remain on the premises as long term visitors or residents. *Page 1