OPINION
{¶ 1} David Moton appeals from the trial court's decision and entry awarding permanent custody of his minor child, D.M., to Montgomery County Children's Services (MCCS).
 {¶ 2} Moton advances two assignments of error on appeal. First, he contends the trial court erred in awarding MCCS permanent custody. He asserts that the agency *Page 2 
failed to prove its case and that the evidence does not support the trial court's ruling. Second, he claims the trial court erred in finding its permanent custody award to be in the best interest of D.M.
 {¶ 3} The record reflects that D.M. was born in October 2005 and was adjudicated a dependent child the following month. In January 2006, he was placed in the temporary custody of his paternal grandmother. At that time, MCCS filed a case plan imposing various obligations on Moton and D.M.'s mother, Denica Murph. With regard to Moton, his primary responsibility under the case plan was to participate in a domestic violence education program and to follow through with all recommendations. Although Moton started a "PATH" domestic violence program, he failed to complete it after having an altercation with Murph.
 {¶ 4} In May 2006, MCCS moved to have D.M. returned to the legal custody of his mother, Denica Murph, who had completed her case plan requirements. At a hearing in June 2006, however, Murph indicated that she did not want custody. That same day, the paternal grandmother stated that she no longer could care for D.M. After speaking with a representative of MCCS, Moton agreed to assume responsibility for the child. He returned D.M. to the agency within seventy-two hours, however, indicating that child-care issues prevented him from keeping his son. As a result, MCCS placed D.M. in foster care and moved for permanent custody. Around the same time, MCCS also terminated the prior case plan and filed a new one with the trial court in July 2006. The new case plan obligated Moton to complete a parenting/psychological assessment, to complete a parenting class, to follow all recommendations, and to sign a release so necessary referrals could be made and reports could be obtained. In August 2006, this *Page 3 
new case plan was amended to reinstate the prior requirement that Moton complete a domestic violence program.
 {¶ 5} A magistrate subsequently held a November 2006 hearing on MCCS's motion for permanent custody. The magistrate then filed an April 27, 2007 decision awarding permanent custody to MCCS. Objections were filed by Moton, Murph, and the paternal grandmother. The trial court overruled each party's objections in a January 3, 2008 decision and judgment entry. Pursuant to R.C. 2151.414, the trial court found, by clear and convincing evidence, that D.M. could not be placed with either parent within a reasonable time and that a grant of permanent custody to the agency was in the child's best interest. This timely appeal followed.[1]
 {¶ 6} In his first assignment of error, Moton challenges the trial court's finding that D.M. could not be placed with him within a reasonable time. In his second assignment of error, he challenges the trial court's finding that a grant of permanent custody to MCCS was in D.M.'s best interest. Both assignments of error implicate R.C. 2151.414, which authorizes a trial court to grant permanent custody to a children services agency upon a finding, by clear and convincing evidence, that the child cannot be placed with either parent within a reasonable time and that an award of permanent custody to the agency is in the child's best interest. R.C. 2151.414(B)(1)(a).
 {¶ 7} In evaluating whether a child can be placed with a parent within a reasonable time, a trial court must consider all relevant evidence. R.C. 2151.414(E). The Revised Code identifies specific circumstances under which a trial court "shall enter a *Page 4 
finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent." Id. One such circumstance exists where, "[f]ollowing the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home." R.C. 2151.414(E)(1). "In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties." Id.
 {¶ 8} In the present case, the trial court relied on R.C.2151.414(E)(1) to find that D.M. could not be placed with Moton within a reasonable time. In support, the trial court explained:
 {¶ 9} "The Court finds the factor set forth in ORC section 2151.414(E)(1) to apply to Mr. Moton, and therefore, the Court must enter a finding that said child cannot be placed with the father within a reasonable time. The Court finds Mr. Moton has failed to complete his case plan objectives within a reasonable amount of time, and has not made any significant progress on the case plan objectives. Specifically, Mr. Moton failed to complete his PATH Program for domestic violence because he was discharged due to an altercation between himself and the mother. (Tr. 50). Mr. Moton failed to get a parenting/psychological assessment because he refused to sign a release for several *Page 5 
months. (Tr. 48-49). Mr. Moton has also failed to attend any parenting classes despite the fact he has been given a list of different providers as well as months to attend classes. (Tr. 83). The Court further finds Mr. Moton failed to meet with the Guardian ad Litem despite several attempts by the Guardian ad Litem. (Tr. 107). Therefore, the Court finds said child cannot be placed with the father within a reasonable time given Mr. Moton's history of domestic violence coupled with his failure to complete treatment, obtain a psychological assessment, attend any parenting classes, or meet with the Guardian ad Litem."
 {¶ 10} In his first assignment of error, Moton claims the trial court erred in finding that D.M. could not be placed with him within a reasonable time. In particular, he argues that MCCS never gave him an opportunity to fulfill the requirements of his case plan. Instead, he asserts that MCCS immediately sought adoption and moved for permanent custody. He also contends his case worker told him D.M. would be returned to him once he resolved child-care issues.
 {¶ 11} Upon review, we find the foregoing arguments to be unpersuasive. This court will not reverse a permanent custody determination "if the record contains competent, credible evidence by which the trial court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established." In re R.G., Montgomery App. No. 22482,2008-Ohio-2895, ¶ 22. The record contains such evidence in the present case.
 {¶ 12} As set forth above, the original January 2006 case plan required Moton to participate in a domestic violence program and to follow all recommendations. He failed to meet this requirement. He was discharged from the PATH program after having an *Page 6 
altercation with Murph. Despite this failure, Moton briefly assumed responsibility for D.M.'s care in June 2006. He returned the child to MCCS less than seventy-two hours later, however, citing child-care problems. As a result, MCCS placed D.M. in foster care, moved for permanent custody, and created a new case plan in July 2006.
 {¶ 13} The new case plan obligated Moton to complete a parenting/psychological assessment, to participate in a parenting class, to follow all recommendations, and to sign a release so necessary referrals could be made and reports could be obtained. In August 2006, the new case plan was amended to add a requirement that Moton complete a domestic violence program. Evidence presented at the hearing on the permanent custody motion supports the trial court's determination that Moton had made little progress toward satisfying the foregoing requirements. As the trial court noted, Moton refused to sign the necessary release until shortly before the permanent custody hearing and had not completed any of the other requirements. Therefore, based on the record before us, we cannot say the trial court abused its discretion when it found, by clear and convincing evidence, that D.M. could not be placed with Moton within a reasonable time. See In re C.F.,113 Ohio St.3d 73, 83, 2007-Ohio-1104, ¶ 48 (applying abuse of discretion standard to trial court's findings under R.C. 2151.414).
 {¶ 14} We also reject Moton's argument that MCCS improperly moved for permanent custody without giving him an opportunity to fulfill the requirements of his case plan. Moton failed to meet the requirements of the initial case plan when he was dismissed from the PATH program. MCCS subsequently moved for permanent custody around the same time that it filed a new case plan. But the existence of a pending permanent custody motion did not deprive Moton of an opportunity to satisfy the *Page 7 
requirements imposed by the new case plan. Moton still could have made an effort to show that D.M. could be placed with him rather than placed for adoption. Indeed, notwithstanding an agency's effort to obtain permanent custody, reunification remains possible if a parent meets the conditions imposed on him. In re C.F., 113 Ohio St.3d at 82. As set forth above, however, Moton did not satisfy the conditions imposed by the new case plan despite being given an opportunity to do so.
 {¶ 15} Finally, we are unpersuaded by Moton's reliance on a case worker's purported promise in June 2006 that D.M. would be returned to him once he resolved child-care issues. Even if a case worker did make this representation, Moton had done nothing to remedy his child-care problems by the time of the November 2006 hearing. When asked during the hearing how he would address child care if he obtained custody of D.M., Moton responded: "Well, let's see, I really haven't been — I mean, when I first had got him I was investigating it, and it was — it was pretty expensive." (Tr. 106). Moton then added: "And, you know, I looked around, and I had no other options." (Id.). In short, the record is devoid of evidence that Moton made any progress in resolving his child-care issues between June 2006 and November 2006.
 {¶ 16} Because the record contains competent, credible evidence to support a firm belief that D.M. could not be placed with Moton within a reasonable time, we overrule the first assignment of error.
 {¶ 17} Moton's second assignment of error concerns the trial court's additional finding that an award of permanent custody to MCCS was in D.M.'s best interest. Under R.C. 2151.414(D), a trial court must consider all relevant factors when determining the best interest of the child, including, but not limited to: (1) the interaction and *Page 8 
interrelationship of the child with the child's parents, relatives, foster parents and any other person who may significantly affect the child; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors in R.C. 2151.414 (E)(7) through (11) are applicable. In re R.G., supra, at ¶ 23.
 {¶ 18} In the present case, the trial court made the following findings regarding D.M.'s best interest:
 {¶ 19} "The Court further finds, upon careful consideration of all the factors set for[th] in ORC section 2151.414(D), that granting Permanent Custody of [D.M.] to MCCS to be in the best interest of the child. The Court finds that said child is very young, has been in foster care for most of his life, and has not had sufficient contact with the parents or siblings necessary to create a bond. (Tr. 53-55). The Court further finds, recognizing said child is too young to express an opinion, that the Guardian ad Litem recommends, in his report filed on November 7, 2005, the Agency be granted permanent custody in the best interest of the child. The Court further finds said child has been in foster care for most of his life but was not in foster care for 12 or more months in a 22 month period. The Court also finds that said child has been given no sense of permanency during the time said child has been in the custody of Mr. Moton, Ms. Murph, or Ms. Moton [the paternal grandmother]. Specifically, Ms. Moton relinquished custody of said child in June 2006, because of failing health, and Mr. Moton relinquished custody after only 72 hours of custody. (Tr. 39, 81). The Court also finds the factors found in divisions (E)(7) to (11) do not apply to this case. Therefore, the Court finds by clear and *Page 9 
convincing evidence that the balance of these factors weighs in favor of a determination that granting permanent custody of said child to the Agency is in the child's best interest."
 {¶ 20} On appeal, Moton asserts that he loves D.M., that he can provide for the child's needs, and that he has the support of the child's paternal grandmother. Although these assertions, when viewed in isolation, may militate against the trial court's best-interest determination, the issue is not whether Moton has any evidence to support his position. A trial court's judgment in a permanent custody proceeding will not be reversed simply because it is contrary to some evidence. In re T.R., Montgomery App. No. 22291, 2007-Ohio-6593, ¶ 38, motion to certify granted on other grounds, 117 Ohio St.3d 1456,2008-Ohio-1635. An appellant's mere reference to matters that could preponderate against a trial court's findings is not, by itself, sufficient to warrant reversal. Id. at ¶ 40.
 {¶ 21} Upon review, we find clear and convincing evidence to support the trial court's determination, based on all of the evidence, that an award of permanent custody to MCCS was in D.M.'s best interest. As the trial court recognized, D.M. has been in foster care for most of his life. He is currently in a stable environment with a foster parent who wishes to adopt him. This likely prospect for adoption is directly related to the best-interest analysis under R.C. 2151.414. In reA.U., Montgomery App. No. 22264, 2008-Ohio-186, ¶ 34. We note too that the child's guardian ad litem recommended an award of permanent custody to MCCS. Moreover, despite Moton's love for D.M., the record reflects that the child's history of placement with Moton, Murph, and the paternal grandmother has been unstable. In light of these facts, we reject Moton's assertion that the trial court's best-interest finding is contrary to the evidence. The second assignment *Page 10 
of error is overruled.
 {¶ 22} Based on the reasoning set forth above, we affirm the judgment of the Montgomery County Common Pleas Court, Juvenile Division.
FAIN, J., and WALTERS, J., concur.
Hon. Sumner E. Walters, retired from the Third Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.
Copies mailed to:
Mathias H. Heck, Jr.
Jill R. Sink
Christopher A. Deal
Hon. Nick Kuntz
[1] Murph and the paternal grandmother have not appealed from the trial court's ruling awarding permanent custody to MCCS. Therefore, we will examine the trial court's findings primarily as they pertain to Moton. *Page 1