OPINION
{¶ 1} Angela Underwood, the mother of A.U., appeals from a judgment of the Montgomery County Court of Common Pleas, Juvenile Division, which granted permanent custody of A.U. to Montgomery County Children Services ("MCCS"). *Page 2 
A.U.'s father, Travis Mack, has filed a separate appeal from the trial court's judgment, and he is not a party to this appeal. See In reA.U., Montgomery App. No. 22287. For the following reasons, the trial court's judgment will be affirmed.
 {¶ 2} A.U. was born on August 2, 2005, at Miami Valley Hospital. On August 9, 2005, MCCS filed a neglect and dependency complaint seeking custody of A.U. because Underwood tested positive for cocaine at the time of A.U.'s birth. Underwood had also voluntarily admitted herself to the Psychiatric Care Unit of Miami Valley Hospital upon request by the hospital due to her doctor's concerns about her behavior while at the hospital for A.U.'s birth. The trial court granted interim temporary custody to MCCS.
 {¶ 3} On August 10, 2005, MCCS filed a motion for "reasonable efforts bypass," pursuant to R.C. 2151.419(A)(2), seeking a determination that the agency did not have to make reasonable efforts to return A.U. to Underwood on the ground that Underwood's parental rights had been involuntarily terminated with respect to A.U.'s sibling. A hearing on the motion and on an amended neglect and dependency complaint was held on October 19, 2005. On November 16, 2005, the court awarded temporary custody to MCCS and granted the "reasonable efforts by-pass" motion.
 {¶ 4} On February 24, 2006, Underwood filed a petition for custody of A.U. On March 7, 2006, MCCS filed a motion for permanent custody of A.U. On March 24, 2006, Underwood filed an amended motion seeking legal custody or, alternatively, an extension of temporary custody or a planned permanent living arrangement. On May 2, 2006, Mack also filed a motion for legal custody, an extension of temporary custody, or a planned permanent living arrangement. A hearing on the motions was held before *Page 3 
the magistrate on June 28, 2006. At that time, the magistrate also resolved Mack's paternity suit and found that Mack was A.U.'s legal father.
 {¶ 5} On August 4, 2006, the magistrate granted permanent custody to MCCS. Both parents filed objections. On June 21, 2007, the trial court overruled the objections to the magistrate's decision. The court concluded that neither Underwood nor Mack had completed the case plan and that A.U. could not be placed with either parent within a reasonable period of time. The court rejected the parents' claim that MCCS failed to provide adequate services, and it found that placement to MCCS was within A.U.'s best interest. The trial court thus adopted the magistrate's decision granting permanent custody to MCCS.
 {¶ 6} Underwood appeals from the trial court's ruling, raising three assignments of error, which we will address in an order that facilitates our analysis.
 {¶ 7} "I. "THE TRIAL COURT'S DECISION SHOULD BE OVERRULED SINCE THE JUVENILE COURT DID NOT HAVE JURISDICTION TO PROCEED WITH THE DISPOSITIONAL HEARING ON JUNE 28, 2006 BEYOND THE NINETY DAY PERIOD OF THE COMPLAINT'S FILING DATE AS EXPRESSLY REQUIRED BY OHIO REVISED CODE SECTION 2151.35 AND JUVENILE RULE 34."
 {¶ 8} In her first assignment of error, Underwood claims that the trial court was required to hold a hearing on the "complaint" for permanent custody within 90 days of the filing of the motion. She states that, because the hearing was held more than 90 days after MCCS's "complaint" was filed, the juvenile court was required to dismiss the complaint. Underwood relies on R.C. 2151.35 and Juv.R. 34. In response, MCCS asserts that dispositional hearings for motions for permanent custody are governed by *Page 4 
R.C. 2151.414(A)(2), not R.C. 2151.35(B)(1).
 {¶ 9} "There are two ways that an authorized agency may seek to obtain permanent custody of a child under Ohio law. The agency may first obtain temporary custody and then subsequently file a motion for permanent custody, or the agency may request permanent custody as part of its original abuse, neglect, or dependency complaint." In re Angler, Muskingum App. No. CT 2006-0079, 2007-Ohio-3246, ¶ 37, citing R.C.2151.413, R.C. 2151.27(C), and 2151.353(A)(4). Initially, MCCS filed a neglect and dependency complaint with a requested disposition of permanent custody with reasonable bypass or, alternatively, temporary custody. The trial court granted temporary custody to MCCS pursuant to R.C. 2151.353.
 {¶ 10} MCCS's motion for permanent custody, which is at issue, was subsequently filed pursuant to R.C. 2151.413, R.C. 2151.414(B)(1)(a), and R.C. 2151.414(E). As argued by MCCS, when a motion for permanent custody has been filed under R.C. 2151.413, the court must schedule a hearing to be held not later than 120 days after the agency files the motion. R.C. 2151.414(A)(2). The hearing may be continued for a reasonable period of time beyond the 120-day deadline for "good cause shown." Id.
 {¶ 11} In this case, the magistrate held a hearing on the motion for permanent custody within 120 days of the filing of MCCS's motion. Accordingly, the hearing was held in a timely manner. See In reT.R., Montgomery App. No. 22291, 2007-Ohio-6593.
 {¶ 12} The first assignment of error is overruled.
 {¶ 13} "III. "THE TRIAL COURT'S DECISION OF GRANTING PERMANENT *Page 5 
CUSTODY TO CHILDREN SERVICES SHOULD BE OVERRULED AS BEING AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 14} In her third assignment of error, Underwood claims that the trial court's ruling was against the manifest weight of the evidence. She argues that she made reasonable efforts to comply with her case plan.
 {¶ 15} In a proceeding for the termination of parental rights, all of the court's findings must be supported by clear and convincing evidence. R.C. 2151.414(E); In re J.R., Montgomery App. No. 21749, 2007-Ohio-186, ¶ 9. The court's decision to terminate parental rights, however, will not be overturned as against the manifest weight of the evidence if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established.In re Forrest S. (1995), 102 Ohio App.3d 338, 345, 657 N.E.2d 307;Cross v. Ledford (1954), 161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus; see, also, State v. Wilson, 113 Ohio St.3d 382,2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24 (clarifying civil manifest weight of the evidence standard).
 {¶ 16} R.C. 2151.414(B) sets forth the circumstances under which a court may grant permanent custody of a child to a children services agency. Pursuant to R.C. 2151.414(B)(1)(a), the court may grant permanent custody of a child if the court determines, by clear and convincing evidence, that (1) it is in the best interest of the child to grant permanent custody of the child to the children services agency, (2) the child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or *Page 6 
more months of a consecutive twenty-two month period ending on or after March 18, 1999, and (3) the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents. If the child has been in the custody of the children services agency for twelve or more months of a consecutive twenty-two month period, the court need only determine whether permanent custody is in the child's best interest. R.C. 2151.414(B)(1)(d). Here, the record indicates that A.U. had not been in temporary custody for twelve months at the time that MCCS filed its motion for permanent custody.
 {¶ 17} R.C. 2151.414(B)(2) applies when the agency files a motion for permanent custody under R.C. 2151.413(D)(2). A motion under R.C.2151.413(D)(2) must be filed when the trial court makes a finding under R.C. 2151.419(A)(2) that the agency need not make reasonable efforts to prevent the removal of the child from the child's home. Under R.C.2151.414(B)(2), the trial court may grant permanent custody if the court determines (1) that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and (2) that permanent custody is in the child's best interest. Although the trial court had made a finding under R.C. 2151.419(A)(2) as to Underwood based on the involuntary termination of Underwood's parental rights with respect to a sibling of A.U., no such finding was made as to Mack. Accordingly, MCCS apparently proceeded under R.C.2151.414(B)(1)(a).
 {¶ 18} On appeal, Underwood argues that she should have received custody of A.U. because she made reasonable efforts to comply with her case plan. Underwood's case plan had several objectives: (1) complete a substance abuse *Page 7 
assessment and compliance with all recommendations for treatment; (2) complete a parenting and psychological assessment and compliance with recommendations, including that she reduce hospitalizations for mental health issues; (3) obtain stable housing and income; (4) comply with services to address A.U.'s medical needs and complete pre-natal program; and (5) have no further domestic violence instances and contact police if necessary.
 {¶ 19} Three witnesses testified at the hearing on the motion for permanent custody. Krishna Fowler, a caseworker for MCCS, testified that she was assigned to Underwood's family in October 2005. According to Fowler, MCCS referred Underwood to Crisis Care for her substance abuse objective. Underwood had indicated that she did not complete the assessment and that she received very sporadic treatment from Day-Mont. Fowler testified that Underwood stated that she had not been working with Day-Mont recently. Underwood was referred to Dr. Higgins for a psychological/parenting assessment. Underwood attended the first appointment but did not attend the second. Underwood was hospitalized at Twin Valley for mental health issues on three occasions, the most recent from June 5 through 19, 2006. Fowler was informed that Underwood was diagnosed with a schizoaffective disorder and that Underwood was on and off her medication. In February 2006, Underwood's psychiatrist at Twin Valley expressed concern to Fowler about Underwood regaining custody of her baby.
 {¶ 20} As for Underwood's housing and income, Underwood obtained appropriate housing in December 2005 through her mother and received Social Security benefits. Fowler indicated that she would "probably need additional income *Page 8 
to be able to care for a child."
 {¶ 21} In February 2006, Underwood had been referred to Born Free when MCCS learned from her psychiatrist that she was pregnant with her third child; the referral was made due to Underwood's history of substance abuse and the fact that she had tested positive for cocaine when A.U. was born. Underwood did not attend her Born Free appointments, stating that she was too tired, and Born Free terminated its services due to Underwood's noncompliance.
 {¶ 22} As to Mack, Fowler testified that he was to complete a substance abuse assessment at Crisis Care, complete a psychological/parenting assessment, obtain stable housing and income, and attend a batterer's intervention or anger management program to address domestic violence issues. According to Fowler, Mack did not complete the assessment with Crisis Care. Mack informed Fowler that he completed anger management classes with Family Services, but he did not provide verification due to owing $25 for the certificate. Mack lives with his mother, and he told Fowler that he was working moving trailers from state to state and later he was fixing bathrooms in people's homes. Mack did not provide verification of his income. Mack attended only one appointment with Dr. Higgins, to whom he was referred. Mack had another incident of domestic violence with Underwood in March or April 2006.
 {¶ 23} Fowler further testified that A.U. was born premature, had a low birth weight, and she still uses an apnea monitor at night. A.U. recently had ear tube surgery and she suffers from acid reflux. Fowler indicated that Underwood's and Mack's visitation with A.U. has been inconsistent and sporadic. However, Underwood expressed a desire to have A.U. returned to her. MCCS investigated the maternal and *Page 9 
paternal grandmothers for possible placement, but found they were both unsuitable. The paternal grandmother indicated that, due to medical issues, she was not willing to care for A.U. Underwood's mother indicated that she was unwilling to complete a psychological assessment, that she did not want to be the primary caregiver, and that she believed that Underwood could take care of A.U. Fowler indicated that A.U.'s foster parent would like to adopt her.
 {¶ 24} Dr. Higgins, a psychologist, testified as to his assessment of Underwood and Mack. He stated that they were both scheduled for September 26, 2005, and they arrived one hour late. Dr. Higgins had Mack complete a personality test while he interviewed Underwood. Underwood informed Dr. Higgins that she had been diagnosed with schizoaffective disorder. He stated that persons with that diagnosis typically exhibit erratic behavior, have impaired judgment, and typically exhibit delusional behavior. Dr. Higgins stated that Underwood exhibits symptoms, such as having "quite disorganized" speech, having her thought "go off onto a tangent that had nothing to do with the question that I had posed to her," and being "emotionally flat." Underwood did not attend her next scheduled appointment. Dr. Higgins sent MCCS a report indicating that Underwood had a severe mental disorder, that she was in need of significant mental health intervention and drug treatment. Dr. Higgins testified that he had concerns about Underwood's ability to parent a child and that someone with schizoaffective disorder could present a risk to the child.
 {¶ 25} Dr. Higgins did not speak with Mack at that appointment, but he reviewed the personality test. The test suggested that Mack had a narcissistic personality disorder as well as a histrionic personality disorder. Mack did not attend any *Page 10 
subsequently scheduled appointment. Dr. Higgins stated that he was "not really" able to determine anything about Mack's ability to parent.
 {¶ 26} Mack testified at the hearing that he did not complete the assessment through Crisis Care because the scheduled appointment interfered with his work schedule. He stated that he missed several follow-up appointments with Dr. Higgins because he was ill and he could not get another appointment "because you can only miss so many appointments." Mack testified that he completed the anger management class. He acknowledged that his visitation with A.U. was sporadic, but he explained that it was due to his work schedule and then he was in jail for domestic violence. Mack stated that he had not bonded with A.U. because he has not been around her. Mack requested that the court order more visitations rather than permanent custody to MCCS. He stated that he was willing to do "whatever it takes" so that A.U. could be returned home.
 {¶ 27} In addition to the above testimony, the guardian ad litem submitted a report to the court, which recommended that the motion for permanent custody be granted.
 {¶ 28} Based on the record, we find no error in the trial court's determinations that Underwood had failed to complete her case plan, that A.U. could not be placed with either parent within a reasonable period of time, and that placement to MCCS was in A.U.'s best interest. The record establishes that Underwood has a severe mental disorder and has had a substance abuse problem, specifically with the use of cocaine. Based on Underwood's repeated hospitalizations for her schizoaffective disorder and the lack of evidence that she addressed her substance abuse problem, there is *Page 11 
substantial evidence that these conditions would pose a risk to A.U. The record further establishes that Underwood has insufficient income to care for A.U. and, based on Underwood's failure to address her prenatal needs, it is questionable at best whether she would be able to care for A.U.'s medical needs. Finally, Fowler testified that A. U.'s foster parent is interested in adopting her and could provide for A.U.'s needs. Thus, the evidence strongly supports the conclusion that A.U. could not be returned to Underwood within a reasonable time and that permanent custody to MCCS is in A. U.'s best interest. We have concluded in Mack's appeal that the trial court did not err in finding that A.U. also could not be returned to him within a reasonable period of time. See In reA.U., Montgomery App. No. 22287.
 {¶ 29} The third assignment of error is overruled.
 {¶ 30} "II. "THE TRIAL COURT'S DECISION OF GRANTING PERMANENT CUSTODY TO CHILDREN SERVICES SHOULD BE OVERRULED BECAUSE THE CASE PLAN WAS DEFECTIVE AS BEING IN VIOLATION OF THE OHIO REVISED CODE."
 {¶ 31} In her second assignment of error, Underwood asserts that MCCS's motion for permanent custody was fatally defective because MCCS failed to include a plan for A.U.'s adoption. Citing In re Muldrew, Montgomery App. No. 19469, 2002-Ohio-7288, MCCS responds that the agency "is not required to set forth an exact plan for adoption until permanent custody is granted." Id. at ¶ 20. MCCS also asserts that, although no plan for adoption was included in the case plan, such information was provided at trial.
 {¶ 32} R.C. 2151.413(E) provides: "Any agency that files a motion for *Page 12 
permanent custody under this section shall include in the case plan of the child who is subject of the motion, a specific plan of the agency's actions to seek an adoptive family for the child and to prepare the child for adoption." As noted by MCCS, in Muldrew, we stated that an agency is not required to set forth an exact plan for adoption until after the court grants permanent custody to the agency.
 {¶ 33} We recently overruled Muldrew in In re T.R., supra, reasoning:
 {¶ 34} "The paramount issue for the court to determine in the hearing on the motion for permanent custody is whether `it is in the best interest of the child to grant permanent custody to the agency that filed the motion.' R.C. 2151.414(A)(1). The purpose of the case plan for adoption required by R.C. 2151.413(E) is to allow the court to consider the child's prospects for adoption if the motion is granted, which is a matter that directly relates to the best interest of the child at issue. It defies logic to allow the agency to defer filing the adoption case plan required by R.C. 2151.413(E) until after permanent custody is ordered."
 {¶ 35} In light of In re T.R., MCCS was required to include a plan for adoption prior to the grant of permanent custody.
 {¶ 36} As an alternative argument, MCCS asserts that it satisfied this requirement through Fowler's testimony at the permanent custody hearing. In Fowler's affidavit in support of the motion for permanent custody, Fowler stated: "Because the parents are unfit/unable to care for the child, it is in the best interest of the child for the Court to commit the child to the permanent custody of MCCS. Details of the casework plan will be presented at the hearing." At the hearing, Fowler testified that the agency had discussed the adoptability of A.U., and it felt that she was adoptable. Specifically, *Page 13 
Fowler stated that A.U.'s foster parents would like to adopt her. Fowler had earlier testified that A.U. was "doing very well [in foster care] considering she does have some developmental and medical issues, but she has been doing very well." Id. at ¶ 27.
 {¶ 37} We agree with MCCS that Fowler's affidavit and testimony were sufficient to satisfy R.C. 2151.413(E). Fowler informed the court that the agency had considered A.U.'s adoptability, and she expressly stated that A.U.'s foster parents were interested in adopting her. In this respect, this case is distinguishable from In re T.R., in which the caseworker testified that the agency believed the children were adoptable and that the children had done well in foster care, but there was no testimony regarding a specific plan for the children's adoption. See In re T.R. at ¶ 28.
 {¶ 38} The second assignment of error is overruled.
 {¶ 39} The judgment of the trial court will be affirmed.
 BROGAN, J. and GRADY, J., concur. *Page 1