OPINION
{¶ 1} R.G. appeals from an order of the Montgomery County Court of Common Pleas, Juvenile Division, awarding his permanent custody to Montgomery County Children's Services. R.G. contends that the order is not supported by the evidence. He further contends that the decision must be reversed because the agency failed to submit *Page 2 
an adoption plan as required by R.C. 2151.413(E).
 {¶ 2} We conclude that the agency failed to submit an adoption plan, and that the testimony provided at the hearing does not present clear and convincing evidence of R.G.'s adoptability so as to overcome the error. We further conclude that the trial court's finding that the child's best interest is served by an award of permanent custody to the agency is thus based, in part, upon an incorrect finding of fact. Therefore, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings.
 I {¶ 3} Elthia White is the mother of R.G., whose date of birth is August of 1995. R.G. has been diagnosed as mildly mentally retarded with Reactive Attachment Disorder, Oppositional Defiant Disorder, Attention Deficit and Hyperactivity Disorder, as well as a "non-specified mood disorder."
 {¶ 4} In November 1997, Montgomery County Children's Services filed a complaint alleging that R.G. was dependent. Following a hearing, R.G. was adjudged dependent. R.G. was returned to his mother and an order of protective supervision was entered. That order expired in 1998.
 {¶ 5} In late 2001, R.G. was removed from the residence of his mother, Elthia White, following three separate abuse allegations filed against White and her boyfriend. A case plan was implemented and R.G. was returned to White in June 2003. In December 2003, White placed R.G. into a respite foster care program. While in that program, R.G. sustained severe burns to his feet. White could not be located to *Page 3 
authorize medical treatment for the injury; therefore MCCS was required to take temporary custody of the child.
 {¶ 6} Thereafter, another case plan was created, which required White to attend domestic violence classes, visit R.G., obtain housing and employment, attend a psychological/parenting assessment, and attend counseling. White failed to complete the case plan.
 {¶ 7} In October 2004, MCCS filed a motion for permanent custody of R.G. White filed a motion for legal custody or, in the alternative, to place R.G. in a planned permanent living arrangement. A hearing was conducted in August and October of 2006. The Guardian Ad Litem for R.G. recommended that MCCS be granted permanent custody. The GAL noted that as of August 2006, White had failed to establish independent housing and was residing with her boyfriend in the home of her boyfriend's grandfather. The GAL also noted that White suffered from mental health issues, including Manic Depression and Post-Traumatic Stress Disorder, and that she had failed to adequately comply with treatment therefor.
 {¶ 8} Following the hearing, the magistrate awarded permanent custody of R.G. to MCCS. In granting the agency's motion, the magistrate found that the child's foster parents were providing a stable environment for the child and that they were able to meet his special needs. The magistrate further found that due to White's mental health issues, which she had not adequately addressed, she was not capable of addressing R.G.'s special needs over a "long-term period." The magistrate also found that the child needed legally secure permanent placement, which could not be achieved without the grant of permanent custody. The magistrate stated that "there is a reasonable *Page 4 
expectation of adoption." Finally, the magistrate found that granting permanent custody to the agency was in the child's best interest.
 {¶ 9} White and R.G. filed separate objections to the decision. These objections were overruled. The magistrate's decision was adopted as the order of the court. From the order awarding permanent custody to MCCS, R.G. appeals.
 II {¶ 10} R.G.'s Second Assignment of Error states as follows:
 {¶ 11} "THE MONTGOMERY COUNTY JUVENILE COURT ERRED IN GRANTING MCCS' MOTION FOR PERMANENT CUSTODY BECAUSE THE CASE PLAN WAS IN VIOLATION OF THE OHIO REVISED CODE AND BECAUSE THERE IS NO REASONABLE EXPECTATION OF ADOPTION."
 {¶ 12} R.G. contends that the decision of the trial court must be reversed because the agency failed to include a plan for adoption in its case plan, as required by R.C. 2151.413(E). MCCS contends that even if it should have included an adoption plan, its failure to do so was harmless because adoptability, as set forth in the case plan, is "but one factor for a court to consider in determining the best interest of the child," and because there was sufficient evidence to support a finding that a grant of permanent custody to the agency is in the child's best interest.
 {¶ 13} R.C. 2151.414(E) provides that an agency shall include a case plan for adoption with its motion for permanent custody. "The purpose of the case plan for adoption required by R.C. 2151.413(E) is to allow the court to consider the child's prospects for adoption if the motion is granted, which is a matter that directly relates to *Page 5 
the best interest of the child at issue." In re T.R., T.H., A.H.,D.H., Montgomery App. No. 22291, 2007-Ohio-6593, ]}27.
 {¶ 14} This court has held that a juvenile court errs in granting an agency's motion for permanent custody when the agency fails to file an adoption plan and the evidence related to adoptability is "tangential, at best." In re T.R., supra, ]}28.
 {¶ 15} However, we have also held that failing to file an adoption plan is not automatically fatal to the motion for permanent custody. See, In re A.U., Montgomery App. No. 22264, 2008-Ohio-186, wherein we upheld a grant of permanent custody, despite the fact that the agency failed to submit an adoption case plan. Id. In that case, the agency did submit an affidavit in support of its motion for permanent custody wherein it averred the following: "Because the parents are unfit/unable to care for the child, it is in the best interest of the child for the Court to commit the child to the permanent custody of MCCS. Details of the casework plan will be presented at the hearing." Id., ]}36. In conjunction, there was testimony at the hearing demonstrating that the agency had "discussed the adoptability of A.U., [that the agency] felt that she was adoptable [and that] the foster parents would like to adopt her." Id. This court found that the "affidavit and testimony were sufficient to satisfy R.C. 2151.4123(E)." Id. at ]}37.
 {¶ 16} Returning to the facts of this case, the only evidence indicating that R.G. is adoptable consists of the hearing testimony of Angela Hosier. Hosier was R.G.'s MCCS caseworker from March through August of 2006. According to Hosier, R.G. is adoptable. She did not have any basis for her opinion other than to state that "the agency believes all children are adoptable." *Page 6 
 {¶ 17} Conversely, James Lindsey, R.G.'s long-term therapist, testified that, given R.G.'s age and mental condition, he is not adoptable. Linda Latson, who was the caseworker for R.G.'s case from January 2001 until March 2006, also testified that the child is not adoptable. She based her opinion on the information available on adoptability and upon R.G.'s behaviors. Further, while the child's foster father testified that the foster family will permit R.G. to stay in their home if MCCS is awarded permanent custody over him, he also testified that the family is not interested in adopting R.G., and indicated that the child would need to leave the home if he becomes "too uncontrollable to keep."
 {¶ 18} This case is not similar to In re A.U., supra, in that there is no evidence of a specific adoption plan and no alternative sufficient evidence of adoptability. Further, based upon this record, the finding that R.G. is adoptable is based upon wishful thinking rather than reality. In other words, we find no competent, credible evidence that R.G. is adoptable. Thus, based upon our holdings in In re T.R., T.H.,A.H., D.H., supra, we sustain R.G.'s Second Assignment of Error.
 III {¶ 19} R.G.'s First Assignment of Error states as follows:
 {¶ 20} "THE MONTGOMERY COUNTY JUVENILE COURT ERRED IN FINDING CLEAR AND CONVINCING EVIDENCE THAT IT IS IN R.G.'S BEST INTEREST TO BE PLACED IN THE PERMANENT CUSTODY OF MCCS."
 {¶ 21} R.G. contends that the trial court's decision is not supported by the evidence. He contends that his best interest would be served by reuniting him with his *Page 7 
mother, or in the alternative, by placing him in a planned permanent living arrangement.
 {¶ 22} A trial court may award permanent custody of a child to an agency when the child has been in the care of the agency for "twelve or more months of a consecutive twenty-two month period" and there is clear and convincing evidence that doing so is in the best interest of the child. R.C. 2151.414(B)(1)(d). A judgment of a trial court regarding permanent custody will not be overturned as against the manifest weight of the evidence if the record contains competent, credible evidence by which the trial court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established. R.C. 2151.414; In re A. U., Montgomery App. No. 22287, 2008-Ohio-187, ]} 9.
 {¶ 23} R.C. 2151.414(D) directs the trial court to consider all relevant factors when determining the best interest of the child, including, but not limited to: (1) the interaction and interrelationship of the child with the child's parents, relatives, foster parents and any other person who may significantly affect the child; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors in R.C. 2151.414(E)(7) through (11) are applicable.
 {¶ 24} In this case, there is competent, credible evidence that the child interacts with, and is bonded to his mother and his siblings. There is also evidence that he interacts well with his foster family. The evidence also demonstrates that the child, who was almost eleven years old at the time of the hearing, wished to remain with his *Page 8 
mother. However, there is competent credible evidence to indicate that the mother is unable to care for R.G. Thus, the juvenile court reasonably concluded that R.G.'s need for legally secure placement cannot be met by returning him to his mother.
 {¶ 25} At issue then, is whether a legally secure placement will be possible with an award of custody to MCCS. The juvenile court concluded that the legally secure placement depended upon an award of custody to the agency. This conclusion was based upon a finding that there was a reasonable expectation of adoption. But, as noted in Part II, above, there is not sufficient clear and convincing evidence to support a finding that R.G. will be adopted. Therefore, the juvenile court's conclusion regarding the best interest of the child is based in part upon an erroneous finding.
 {¶ 26} Based upon this record, we conclude that the juvenile court erroneously found that the child was adoptable and that, consequently, a legally secure permanent placement would be afforded via an award of custody to the agency. Therefore, we conclude that the decision regarding the best interest of the child is based upon erroneous facts and not supported by the record. Accordingly, the First Assignment of Error is sustained.
 IV {¶ 27} Both of R.G.'s assignments of error having been sustained, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings.
WOLFF, P. J., and GRADY, J., concur.
Copies mailed to:
 Mathias H. Heck, Jr. *Page 9 
Jill R. Sink
Jeremiah J. Denslow
 Hon. Anthony Capizzi *Page 1