OPINION
{¶ 1} Appellant, R.R. ("Mother"), appeals from orders of the Juvenile Court terminating her parental rights and granting permanent custody of three of her children to *Page 2 
Montgomery County Children Services ("MCCS").
 {¶ 2} Mother is HIV positive, has diabetes, and has a mild mental retardation. She has five minor children. Three of her children, M.W., S.W., and J.H., are the subject of this consolidated appeal. M.W. was born on November 17, 1995, S.W. was born on August 2, 1999, and J.H. was born on October 14, 2002.
 {¶ 3} On October 23, 2000, MCCS filed complaints alleging that M.W. and S.W. were neglected and dependent children, R.C. 2151.03(A)(2)-(3). On December 13, 2000, temporary custody of M.W. and S.W. was granted to MCCS. MCCS filed motions for permanent custody of M.W. and S.W. on February 13, 2002. On October 15, 2002, MCCS filed a dependency complaint regarding J.H. On November 20, 2003, temporary custody of J.H. was granted to MCCS. On June 15, 2005, MCCS filed a motion asking to be granted permanent custody of J.H., or in the alternative for legal custody of J.H. to be awarded to J.H.'s maternal aunt and uncle.
 {¶ 4} A hearing on the three motions for permanent custody was held on February 16, 2006, May 18, 2006, and September 21-22, 2006. The Magistrate filed a decision granting MCCS permanent custody of all three children on October 31, 2006. Mother filed timely objections to the Magistrate's decision. *Page 3 
 {¶ 5} On October 22, 2007, the trial court overruled Mother's objections, terminated parental rights of the Mother and the fathers of the three children, and granted MCCS's motions for permanent custody of J.H., M.W., and S.W. Mother filed timely notices of appeal from the three decisions of the trial court. (Montgomery County Case Nos. 2000-6583, 2000-6584, and 2002-9638.) For purposes of judicial economy, the three appeals (Montgomery App. Nos. 22512, 22513, 22514) are consolidated and will be addressed in this Opinion.
 {¶ 6} Mother raises a total of six assignments of error in her three appeals. With regard to each of the three children, Mother argues that the trial court's judgment must be reversed because the motions for permanent custody lacked specific case plans for adoption (R.C. 2151.413(E)), and because the grants of permanent custody to MCCS were against the manifest weight of the evidence.
 {¶ 7} In a proceeding for the termination of parental rights, all of the trial court's findings must be supported by clear and convincing evidence. R.C. 2151.414(E); In re J.R., Montgomery App. No. 21749,2007-Ohio-186, ¶ 9. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the *Page 4 
evidence." C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, 280.
 {¶ 8} R.C. 2151.413(E) provides that: "Any agency that files a motion for permanent custody under this section shall include in the case plan of the child who is the subject of the motion, a specific plan of the agency's actions to seek an adoptive family for the child and to prepare the child for adoption." (Emphasis supplied.) Mother argues that the trial court's decisions must be reversed with regard to all three children because MCCS did not comply with R.C. 2151.413 when it failed to include in its motions for permanent custody a specific plan of the agency's actions to seek an adoptive family for each of the three children.
 {¶ 9} "The purpose of the case plan for adoption required by R.C. 2151.413(E) is to allow the court to consider the child's prospects for adoption if the motion is granted, which is a matter that directly relates to the best interest of the child at issue." In re T.R., T.H.,A.H., D.H., Montgomery App. No. 22291, 2007-Ohio-6593, ¶ 27. We have held that the trial court must have an adoption case plan before it in order to grant a motion for permanent custody filed by a children's services agency. Id., _28. *Page 5 
 {¶ 10} MCCS concedes that it did not include a case plan for adoption with its motions for permanent custody. MCCS argues, however, that the case plan requirement in R.C. 2151.413(E) can be and was satisfied by testimony at the hearing on the motions for permanent custody. MCCS cites our opinion in In re A.U., Montgomery App. No. 22264,2008-Ohio-186, in support of its position. Our recent opinion in Inre R.G., Montgomery App. No. 22482, 2008-Ohio-2895, _14-15, addresses R.C. 2151.413(E) and our decision in In re A.U.:
 {¶ 11} "This court has held that a juvenile court errs in granting an agency's motion for permanent custody when the agency fails to file an adoption plan and the evidence related to adoptability is `tangential, at best.' In re T.R., supra, ¶ 28.
 {¶ 12} "However, we have also held that failing to file an adoption plan is not automatically fatal to the motion for permanent custody. See, In re A.U., Montgomery App. No. 22264, 2008-Ohio-186, wherein we upheld a grant of permanent custody, despite the fact that the agency failed to submit an adoption case plan. Id. In that case, the agency did submit an affidavit in support of its motion for permanent custody wherein it averred the following: `Because the parents are unfit/unable to care for the child, it is in the best interest *Page 6 
of the child for the Court to commit the child to the permanent custody of MCCS. Details of the casework plan will be presented at the hearing.' Id., ¶ 36. In conjunction, there was testimony at the hearing demonstrating that the agency had `discussed the adoptability of A.U., [that the agency] felt that she was adoptable [and that] the foster parents would like to adopt her.' Id. This court found that the `affidavit and testimony were sufficient to satisfy R.C. 2151.413(E).' Id. at ¶ 37."
 {¶ 13} On page 15 of its brief, MCCS argues that "Here, testimony revealed that all three of these children are adoptable. (Tr. 384) There is a prospective adoptive placement for J.H. with his current foster family. (Tr. 384) In fact, his foster placement filed a legal custody motion. MCCSB saw no issues questioning the fitness of his foster placement as a legal custodian. (Tr. 407) M.W. and S.W. moved to their current foster home only a few months before foster mother's testimony so [it] was too soon for that family to consider adoption. (Tr. 195, 217) However, the children adjusted to that family and are doing extremely well there. (Tr. 195, 217, 220) As such, as in In reA.U., the court was provided with sufficient information to satisfy R.C. 2151.413(E)." *Page 7 
 {¶ 14} Based on a review of the portion of the transcript cited by MCCS, along with the record as a whole, we agree that the testimony at the hearing was sufficient to satisfy R.C. 2151.413(E) with respect to J.H. The testimony showed that J.H. was adoptable and that his current foster parent, whom he had been with for virtually all of his life, planned to adopt him once MCCS gained permanent custody. Therefore, the trial court did not err in finding that J.H. was adoptable. In reA.U.
 {¶ 15} We find that the testimony at the hearing on MCCS's motions for permanent custody failed to satisfy the requirement of R.C. 2151.413(E) with respect to M.W. and S.W. At most, the testimony at the hearing established that M.W. and S.W. were doing well at their third foster home, which they had been at for 45 days. But there was no testimony or affidavits that the current foster parents planned or wished to adopt M.W. and S.W. or that MCCS had a case plan in place to facilitate an adoption. Indeed, MCCS concedes that, at the time of the hearing, it was too soon for the current foster family to consider an adoption. Therefore, the trial court erred in finding that MCCS had complied with the requirement of R.C. 2151.413(E) with respect to M.W. and S.W. SeeIn re T.R., T.H., A.H., D.H., and In re R.G. *Page 8 
 {¶ 16} Mother's assignments of error relating to the adoption case plan requirement (R.C. 2151.413(E)) are sustained with regard to M.W. and S.W. Therefore, we need not address Mother's other assignments of error regarding M.W. and S.W. and we overrule them as moot. App. R. 12(A)(1)(c).
 {¶ 17} The additional assignments of error involve whether the trial court erred in finding that the termination of parental rights and permanent placement of J.H. with MCCS was in J.H.'s best interest. Mother argues that the trial court erred in finding (1) that J.H. could not be placed with her in a reasonable time pursuant to R.C. 2151.414(B), and (2) that it was in the best interest of J.H. to grant permanent custody of J.H. to MCCS.
 {¶ 18} Pursuant to R.C. 2151.414(B)(1)(a), the court may grant permanent custody of a child if the court determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the children services agency, and that at least one of the circumstances in R.C. 2151.414(B)(1)(a)-(d) exists. Notably, if the child has been in the custody of the children services agency for twelve or more months of a consecutive twenty-two month period, the court need only determine whether permanent custody is in the child's best interest. *Page 9 
R.C. 2151.414(B)(1)(d). Here, it is undisputed that J.H. had been in temporary custody for at least twelve months at the time that MCCS filed its motion for permanent custody of J.H. Therefore, the trial court was not required to make a finding that J.H. could not be placed with Mother within a reasonable time.
 {¶ 19} Further, the trial court did not err in finding that the permanent placement with MCCS was in J.H.'s best interest. R.C. 2151.414(D) provides, in pertinent part:
 {¶ 20} "In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
 {¶ 21} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 22} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; *Page 10 
 {¶ 23} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 24} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 25} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 26} The magistrate found that it was in the best interest of J.H. to terminate parental rights and grant permanent custody of him to MCCS to facilitate the adoption process by the foster mother. The magistrate noted the following facts that supported a termination of parental rights:
 {¶ 27} "12. The mother suffers from AIDS, has refused to grant releases to allow review of her medical condition and ability to parent this child. Mother has not established a bond with this child; the child being in foster care with the same foster parent since birth. The mother [h]as a significant history of domestic violence and still associates *Page 11 
with an abuser.
 {¶ 28} "13. The mother has failed to remedy repeatedly the conditions causing the child to be placed outside the home.
 {¶ 29} "14. The mother has an illness or disability so severe causing an inability to provide an adequate home for the child.
 {¶ 30} * * *
 {¶ 31} "25. The case plan was directed at the mother and includes the following objectives:
 {¶ 32} "a. Secure permanent housing, which she accomplished, but said housing is insufficient to allow children;
 {¶ 33} "b. Provide medical releases to review AIDS condition and the mother has not complied; and,
 {¶ 34} "c. Domestic violence counseling — Mother was involved in domestic violence counseling but continues to associate with an abuser.
 {¶ 35} "26. The mother did not complete the Case Plan as indicated.
 {¶ 36} * * *
 {¶ 37} "30. The Guardian ad Litem recommends permanent custody to Montgomery County Children Services with a *Page 12 
preference that the current foster mother . . . be allowed to adopt the child."
 {¶ 38} In overruling Mother's objections to the Magistrate's decision, the trial court reiterated that permanent placement with MCCS was in J.H.'s best interest because Mother failed to substantially complete the objectives in her case plan, failed to bond with J.H., was unable to fulfill J.H.'s need for a legally secure permanent placement, and because J.H.'s foster parent wishes to adopt J.H. and is receptive to an open adoption. The trial court properly considered and weighed the facts relevant to J.H.'s best interest.
 {¶ 39} Mother argues that the weight of the evidence does not support the findings that she suffers an unresolved medical condition, lacks adequate housing, and has not remedied the issues associated with domestic violence. The testimony at the hearing was less than conclusive on what exactly is Mother's medical condition. It is clear that she is HIV positive, but it does not appear that Mother suffers from AIDS, which the magistrate incorrectly stated in his decision. Much of this confusion may have been caused by Mother's refusal to provide certain medical releases that were *Page 13 
sought by MCCS in order to determine the exact nature of her medical condition.
 {¶ 40} Apparently, Mother refused to provide certain medical releases on the advice of her legal counsel. We acknowledge the difficult situation the trial court faced in weighing Mother's privacy interests with the need to determine the best interest of J.H. We would be troubled had the trial court granted permanent custody to MCCS based solely on a mistaken belief that Mother suffered from AIDS. But the trial court relied on a number of facts unrelated to Mother's medical condition in making its determination regarding the best interest of J.H.
 {¶ 41} There was clear and convincing evidence that Mother lacked adequate housing for J.H. Although there was testimony from J.H.'s maternal grandmother that she was attempting to obtain adequate housing, such housing had not been secured at the time of the hearing on MCCS's motion.
 {¶ 42} Finally, there was clear and convincing evidence that Mother continued to have contact with J.H.'s father, who previously had engaged in domestic violence toward Mother. Also, there was clear and convincing evidence that Mother failed to complete some domestic violence classes that were part of her case plan. *Page 14 
 {¶ 43} The trial court's decision to grant MCCS's motion for permanent custody was supported by clear and convincing evidence and was not against the manifest weight of the evidence. Therefore, Mother's assignments of error with regard to J.H. are overruled.
 Conclusion {¶ 44} Mother's assignments of error with regard to J.H. are overruled. Therefore, the trial court's decision in In re J.H., Montgomery County Case No. 2002-JC-9638, is affirmed. The trial court's decisions in In re M.W., Montgomery County Case No. 2000-JC-6583, andIn re S.W., Montgomery County Case No. 2000-JC-6584, are reversed and the causes are remanded for further proceedings consistent with this Opinion.
DONOVAN, J. and GLASSER, J., concur.
(Hon. George M. Glasser, retired from the Sixth Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio). *Page 1