[Cite as *In re D.Y.*, 2017-Ohio-5754.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

|  |  |  |
| --- | --- | --- |
| IN THE MATTER OF: | : | |
| | : | Appellate Case No. 27450 |
| D.Y. | : | |
| | : | Trial Court Case No. 2007-7918 |
| | : | |
| | : | (Juvenile Appeal from |
| | : | Common Pleas Court) |
| | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 7th day of July, 2017.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ALICE PETERS, Atty. Reg. No. 0093945, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5TH Floor, Dayton, Ohio 45422
    Attorney for Appellee, Montgomery County Children Services Board


CHRISTOPHER EPLEY, Atty. Reg. No. 0070981, 10 West Second Street, Suite 2400, Dayton, Ohio 45402
    Attorney for Appellant

. . . . . . . . . . . .

HALL, P.J.

{¶ 1} Montgomery County Children Services (MCCS) has a very long history with the mother in this case. She has six children and has now lost custody of them all. All of them are in the permanent custody of MCCS. The case before us concerns the permanent custody of the youngest child, 11-year-old "Dana[1]." We conclude that the decision to grant MCCS permanent custody of her is not contrary to the manifest weight of the evidence and is not an abuse of the court's discretion. So we affirm.

## I. Background

{¶ 2} In 2007, MCCS filed a dependency complaint as well as a motion for ex parte custody of Dana. The motion was granted, and MCCS was given interim temporary custody. Later, Dana was adjudicated dependent, and in 2009, her father was given legal custody. In 2011, after allegations of abuse by Dana's caregivers surfaced, MCCS was again given temporary custody of her. Later that year, the juvenile court suspended parental visitation because of Dana's mental-health issues. MCCS's temporary custody was extended in 2012 and extended again the following year. Early in 2013, Dana was placed in a planned permanent living arrangement.

{¶ 3} In 2015, MCCS moved for permanent custody of Dana. A magistrate sustained the motion in January 2016, and Mother filed objections with the juvenile court. Mother argued, among other things, that the magistrate was incorrect in finding that it was in Dana's best interest for MCCS to have permanent custody. The juvenile court overruled all of Mother's objections and sustained MCCS's motion, granting it permanent custody

---

[1] We use this pseudonym to protect the identity of the minor child.

of Dana and terminating Mother's parental rights.

{¶ 4} Mother appealed.

## II. Analysis

{¶ 5} Mother assigns two errors to the juvenile court. The first alleges that the court erred by finding that granting permanent custody to MCCS is in Dana's best interest. And the second alleges that the permanent-custody decision is against the manifest weight of the evidence.

{¶ 6} The United States Supreme Court has described the interest of parents in the care, custody, and control of their children as "perhaps the oldest of the fundamental liberty interests recognized by this Court." *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). And the Ohio Supreme Court has recognized that "there is an essential and basic civil right to conceive and raise children." *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 39. But "[t]he fundamental interest of parents is not absolute." *In re D.A.,* 113 Ohio St.3d 88, 2007-Ohio-1105, 862 N.E.2d 829, ¶ 11. "The state has broad authority to intervene to protect children from abuse and neglect." *State ex rel. Allen Cty. Children Servs. Bd. v. Mercer Cty. Common Pleas Court, Prob. Div.*, Ohio Sup.Ct. Slip Opinion No. 2016-Ohio-7382, ¶ 58 (O'Connor, C.J., dissenting), citing *In re C.F.,* 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 28.

{¶ 7} The termination of parental rights is governed by R.C. 2151.414. Division (B)(1) of that statute requires a court to determine, "by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody," and that certain other conditions apply. Clear and convincing evidence has been defined as " 'that measure or degree of

proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *In re K.H.* at ¶ 42, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 8} A court's decision to terminate parental rights "will not be overturned as against the manifest weight of the evidence if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established." (Citations omitted.) *In re A.U.*, 2d Dist. Montgomery No. 22264, 2008-Ohio-186, ¶ 15. "We review the trial court's judgment for an abuse of discretion." *In re L.C.*, 2d Dist. Clark No. 2010 CA 90, 2011-Ohio-2066, ¶ 14, citing *In re C.F.* at ¶ 48 (applying the abuse-of-discretion standard to trial court's findings under R.C. 2151.414).

{¶ 9} A two-part test applies to determine whether to grant a public children services agency's motion for permanent custody. R.C. 2151.414(B)(1) provides that a court may grant permanent custody if it clearly and convincingly finds that (1) the child's best interest lies in granting permanent custody to the agency, and (2) any of the statutory alternatives apply, one of which is the child has been in the temporary custody of one or more public or private children services agencies for 12 or more months of a consecutive 22-month period, R.C. 2151.414(B)(1)(d). As to the second part of the test, there is no dispute that it is satisfied. Dana has been in MCCS's temporary custody for over 12 months of a consecutive 22-month period. Indeed, Mother challenges only the juvenile court's finding that granting MCCS permanent custody is in Dana's best interest. So our

review focuses on the first part of the permanent-custody test—the best-interest determination and the evidence supporting it.

**{¶ 10}** In determining a child's best interest, R.C. 2151.414 instructs courts to consider "all relevant factors," including five statutory factors:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers, out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1). "No one element is given greater weight or heightened significance." *In re C.F.,* 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, at ¶ 57. The juvenile court here considered each of these factors.

(a) *Dana's interactions and interrelationships*

**{¶ 11}** The court found that the first factor weighs in favor of granting permanent custody to MCCS. Angela Hosier, the family's MCCS caseworker from July 2013 through March 2014, testified that more often than not, Mother attended visitation at MCCS. Hosier said that during Mother's visits she never saw anything about the interaction of

Mother and Dana that concerned her. But Mother's interactions with others is a different matter. Hosier testified that Mother's anger could be quickly aroused and that Mother then became very loud, argumentative, and aggressive. Mother's volatile behavior troubled her, Hosier said, because Dana reacts much more positively when those around her are calm. Hosier testified that Mother has a bond with Dana and wants to be reunited with her.

{¶ 12} Nell Oliver-Elliott was the family's caseworker for a time in 2013 and again from March 2014 to March 2015. She observed Mother and Dana together in 2013 and said that the interactions were appropriate and that the two had a strong bond then. But Oliver-Elliott testified that she did not see them together during her second tenure as the caseworker.

{¶ 13} Vikki Carter is the family's current caseworker. She testified that Dana is currently in a treatment foster-care home in Cincinnati where she has been since May 2015. The foster parents have two children, and another foster child is also living in the home. Carter said that Dana's needs are being met in the foster home and that she is doing well. One of the foster parents has established a really good relationship with Dana and is able to calm her down. Carter said that Dana is incorporated into the family. Dana is settled in the foster home, said Carter, and has bonded with her foster family, including with the foster parents' children, whom she considers her brothers. Carter testified that in her experience children with issues like Dana's need to be in a home with structure and that Dana's foster family works hard to provide her that structure. Carter said that Dana is responding well. Carter testified that she has not broached the subject of the foster family's role with the family if permanent custody is given to MCCS. But she noted that

the foster family is invested in Dana and that Dana seems to be invested in the family. Carter said that Dana sometimes says that she wants to live with her foster parents.

{¶ 14} Dana has not had contact with either of her parents for quite some time because of her mental-health issues. From the time Dana went into residential care in November 2013 until March 2014, Mother had no visits with her. Indeed, Mother never visited Dana while she was in residential care, though Mother did have some phone contact and sent Dana Christmas gifts. As it stands right now, Mother has not seen or spoken to Dana for about three years.

### (b) *Dana's wishes*

{¶ 15} The juvenile court found that the second statutory factor is neutral. The court found that Dana has said that she wants to live with "Mom" but that she has referred to several people as Mom. Dana has said sometimes that she wants to live with her biological mother but has said other times that she wishes to live with her current foster parents. The court noted that Carter testified that Dana never asked her about seeing Mother.

### (c) *Dana's custodial history*

{¶ 16} The juvenile court found that the third factor weighs in favor of granting permanent custody to MCCS. The court found that since she was barely two years old, Dana has lived with her father, in multiple foster and treatment homes, and in at least two residential-treatment facilities.

### (d) *Dana's need for permanency*

{¶ 17} The juvenile court found that the fourth factor weighs in favor of granting permanent custody to MCCS, saying that a legally secure, permanent placement cannot

be achieved without granting permanent custody to MCCS. Dana has spent a good part of her life—over 4 of her 11 years—in the custody of MCCS. Given the length of time that she has been removed from the home and the fact that MCCS has twice been granted temporary-custody extensions, said the court, Dana is in desperate need of a legally secure, permanent placement. The court also noted that Dana's CASA/GAL recommended that MCCS be given permanent custody.

{¶ 18} The juvenile court noted that MCCS does not believe that reunification is possible at any time in the foreseeable future. A case plan for Mother has been in place throughout her entire involvement with MCCS. The objectives set out in the plan are the same as those in the cases concerning her other children. The juvenile court found that while Mother has completed some of the objectives, she still has not completed the most critical objectives. Mother has not obtained and maintained permanent housing suitable for her and Dana; Mother has not completed mental-health treatment; Mother has not completed substance-abuse treatment; Mother has not learned how to work with Dana; Mother has not followed the recommendations from her parenting/psychological assessment; and Mother has not completed a visitation assessment.

{¶ 19} The caseworkers testified that if MCCS is granted permanent custody, Dana's case would be transferred to the adoption unit so that a caregiver or foster parent can be identified who is willing and able to meet Dana's needs. The caseworkers expressed hope that Dana might be able to stay in her current foster home.

(e) *The factors in R.C. 2151.414(E)(7) to (11)*

{¶ 20} The court found that the final statutory factor weighs in favor of granting permanent custody to MCCS. The factor in R.C. 2151.414(E)(10) concerns whether the

parent has abandoned the child. A child is presumed abandoned if the parents have failed to visit or maintain contact with the child for more than 90 days. R.C. 2151.011(C). This presumption persists even if the parents resume contact with the child after the period of abandonment. *Id.* While recognizing that Dana's behavior led to a ban on visitation, the juvenile court found that Mother has not seen Dana for 3 years and has not spoken to her since August 2014 and that this lack of visitation and communication exceeds 90 days. The factor in R.C. 2151.414(E)(11) concerns whether the parent has had parental rights involuntarily terminated with respect to a sibling "and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child." The court found that Mother has had her parental rights involuntarily terminated as to all five of her other children. And the court's findings show that Mother failed to prove that she can adequately care for Dana.

{¶ 21} The manifest weight of the evidence is not against the juvenile court's finding that granting MCCS permanent custody is in Dana's best interest. The court considered the statutory best-interest factors, and the evidence supports the court's findings as to each factor. Based on the evidence and the court's findings, we cannot say that the court abused its discretion by granting MCCS permanent custody of Dana.

{¶ 22} Both assignments of error are overruled.

### III. Conclusion

{¶ 23} We have overruled both of the assignments of error presented. The juvenile court's judgment is therefore affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and TUCKER, J., concur.


Copies mailed to:

Mathias H. Heck
Alice Peters
Jean Steigerwald
Christopher Epley
Steven Abshire
Bradley Baldwin
Hon. Anthony Capizzi