[Cite as *In re J.S.*, 2021-Ohio-78.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

|  |  |  |
|---|---|---|
| IN RE: J.S. | : | Appellate Case No. 28816 |
|  | : |  |
|  | : | Trial Court Case No. 2017-3750 |
|  | : |  |
|  | : | (Appeal from Common Pleas |
|  | : | Court – Juvenile Division) |
|  | : |  |
|  | : |  |

. . . . . . . . . . .

O P I N I O N

Rendered on the 15th day of January, 2021.

. . . . . . . . . . .

MATHIAS H. HECK, JR. by LISA M. LIGHT, Atty. Reg. No. 0097348, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Appellee, Montgomery County Children Services

MARK A. FISHER, Atty. Reg. No. 0066939, 5613 Brandt Pike, Huber Heights, Ohio 45424
      Attorney for Appellant, Mother

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Mother appeals from an order of the Montgomery County Court of Common Pleas, Juvenile Division, overruling her objections to a decision of a magistrate and awarding permanent custody of her son, J.S., to Montgomery County Children Services (MCCS). Mother contends that the juvenile court abused its discretion by awarding permanent custody of her child to MCCS, because the record did not support a finding that permanent custody was in the best interest of the child. We conclude that the record supported the juvenile court's decision to grant permanent custody of the child to MCCS. Therefore, we affirm the judgment of the juvenile court.

## I. Factual and Procedural Background

{¶ 2} J.S. was born in March 2008. In 2017, he was adjudicated neglected and dependent and placed in the temporary custody of MCCS. MCCS filed a motion for permanent custody in late 2018, and a hearing on the motion was held in March 2019 before a magistrate. Near the beginning of the hearing, Mother's attorney asked the magistrate for a continuance, saying that Mother could not be present because of a "medical issue." The magistrate denied the request. The evidence presented at the hearing showed that Mother and Father had failed to complete their case plan objectives and that neither Mother nor Father was in a position to adequately care for the child and provide for the child's basic needs.[1] Neither parent had demonstrated the commitment necessary to care for the child on an on-going basis. Furthermore, the child's guardian ad litem (GAL) recommended granting permanent custody to MCCS as being in the best interest of the child, and the child's current foster parents had indicated a desire to adopt

---

[1] Father is not a party to this appeal.

the child. Following the hearing, the magistrate issued a decision granting permanent custody to MCCS. Mother filed objections to the decision. On May 15, 2020, the trial court overruled the objections and adopted the magistrate's decision.

{¶ 3} Mother appeals.

## II. Analysis

{¶ 4} Mother assigns two errors to the trial court. The first challenges the court's permanent-custody decision, and the second challenges the magistrate's denial of a continuance.

## A. The permanent-custody decision

{¶ 5} The first assignment of error alleges:

The Trial Court abused its discretion in granting Montgomery County Children Service's Motion for Permanent Custody of J.S.

{¶ 6} "R.C. 2151.414 establishes a two-part test for courts to apply when determining a motion for permanent custody to a public services agency." *In re S.J.*, 2d Dist. Montgomery No. 25550, 2013-Ohio-2935, ¶ 14. "The statute requires the court to find, by clear and convincing evidence, that: (1) granting permanent custody of the child to the agency is in the best interest of the child; and (2) either the child (a) cannot be placed with either parent within a reasonable period of time or should not be placed with either parent if any one of the factors in R.C. 2151.414(E) are present; (b) is abandoned; (c) is orphaned and no relatives are able to take permanent custody of the child; or (d) has been in the temporary custody of one or more public or private children services agencies for twelve or more months of a consecutive twenty-two month period. R.C. 2151.414(B)(1)." *Id.*

{¶ 7} In determining a child's best interest, R.C. 2151.414(D) directs the trial court to consider all relevant factors, including: "(1) the interaction and interrelationship of the child with the child's parents, relatives, foster parents and any other person who may significantly affect the child; (2) the wishes of the child; (3) the custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors in R.C. 2151.414(E)(7) through (11) are applicable." *Id.* at ¶ 15.

{¶ 8} Mother does not dispute that at the time of the hearing, J.S. had been in the temporary custody of MCCS for more than 12 months. Nor does she dispute the trial court's finding that reasonable efforts were made to reunify J.S. with her or Father or that such efforts would be futile. However, Mother disputes the finding that it was in J.S.'s best interest to grant permanent custody to MCCS. She contends that MCCS failed to prove by clear and convincing evidence that this was in her child's best interest.

{¶ 9} The magistrate found that the first four best-interest factors were the only relevant statutory factors and considered each relevant factor and the related evidence in turn.

(a) *Interactions and interrelationships*

{¶ 10} Dr. Rhonda Lilley, an expert in the field of clinical psychology, conducted a parenting and psychological assessment on Mother in February and April 2018 and also observed Mother with the child in January 2018. Dr. Lilley testified that that, when

frustrated, Mother was likely to respond in a poorly planned and erratic manner—in an inappropriate way that was at times emotionally and physically abusive. Mother's behavior sometimes frightened the child, causing the child to have no sense of trust in Mother to keep him safe or to remain in control. Dr. Lilley described Mother as being unable to maintain control of her emotions, leading to explosive behavior; Mother was likely to launch verbal attacks, cry, scream, yell, and be physically aggressive. In 2012, she hit one of her other children with a stick hard enough to cause bruising. In 2014, Mother exploded with screaming and yelling at J.S. and smeared dog feces on the child's face. Dr. Lilley said that Mother's abusive behavior, without adequate treatment and without adequate controls, would very likely continue. Dr. Lilley described J.S.'s experiences with Mother as traumatic and said that the child should not have contact with Mother until he had stability in his life.

{¶ 11} Matthew Baxter, an MCCS caseworker who worked with Mother, testified that Mother had incidents in July and August 2018 in which she became very emotional and was difficult to calm down, which scared J.S. The child told Baxter that he did not want to visit with Mother. Mother stopped visiting until mid-October 2018, when she asked to resume visits. The visits were resumed, but the child continued to say that he did not want to visit with her. Between October and December 2018, Mother's repeated failure to control her emotions required the caseworker to intervene during visits. Baxter said that the child's current foster family had expressed a desire to adopt the child.

(b) *Child's wishes*

{¶ 12} J.S. told Dr. Lilley and others that he did not feel safe with Mother. He did not trust her to be in control, did not feel safe living with her, and did not want to remain

with Mother.

### (c) *Custodial history*

{¶ 13} MCCS had been involved with the family since 2016. A complaint for neglect and dependency was filed in 2017 that alleged poor home conditions, substance abuse issues, and poor school attendance, and MCCS was granted interim temporary custody of J.S. Later in 2017, the child was adjudicated neglected and dependent, and MCCS was granted temporary custody. In June 2018, an extension of temporary custody was granted.

### (d) *Need for secure placement*

{¶ 14} A case plan was developed for Mother that included these objectives: completing a parenting and psychological assessment and following recommendations; continuing to engage in counseling services; maintaining housing; maintaining income; regularly visiting with the child; and signing releases of information. Dr. Lilley conducted a parenting and psychological assessment on Mother, which Mother completed. The caseworker testified that Mother had failed to provide verification that she had adequately addressed her mental-health issues. Baxter said that Mother had been in counseling, but he had been unable to confirm her ongoing attendance at counseling, because Mother had failed to provide a release permitting him to obtain that information. Mother lived in subsidized housing and had maintained the housing. She had worked for the Community Services for the Deaf but was no longer employed there. Since leaving that job, Mother had not provided verification of employment. Mother visited regularly with J.S. from December 2017 to August 2018. In August, she stopped visiting until October 2018, when she requested to resume visits. Mother then visited with the child from October through

December 2018.

{¶ 15} As for Father, he also had case plan objectives that included completing a substance abuse assessment and following the recommendations of the assessment; submitting to random drug screens, as requested; maintaining income; and maintaining housing. Father did not complete an alcohol and drug assessment. He refused to submit to any requested drug screens. Father was a plumber by trade, but his license was suspended. The caseworker could not verify Father's income. Since 2016, Father's home had been in an unacceptable condition, and the cleanliness of the home had been a constant concern. Father had nine dogs and half of the dogs were not house-trained. There was dog feces throughout the house. Father's home was foreclosed on and he then moved to another home where he resided rent free for six months. Father was still residing there in December 2018. The home did not have appliances and it was cluttered, though not dirty. The home was not deemed appropriate by the caseworker.

{¶ 16} There was no real dispute about the evidence or facts. Mother's argument essentially selects portions of the evidence favorable to her. And some of the evidence did favor her. But we defer to the trial court's decision "if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established." *In re A.U.,* 2d Dist. Montgomery No. 22264, 2008-Ohio-186, at ¶ 15. Our review of the record shows that there was competent, credible evidence from which the trial court could have found by clear and convincing evidence that granting permanent custody of J.S. to MCCS was in the best interest of the child.

{¶ 17} The first assignment of error is overruled.

## B. The denial of a continuance

**{¶ 18}** The second assignment of error alleges:

The Trial Court abused its discretion in denying Appellant's Motion for Continuance and/or order to attend hearing due to a medical issue.

**{¶ 19}** Near the start of the hearing, Mother's attorney moved orally for a continuance because Mother could not attend due to a "medical issue." The magistrate asked the attorney representing the child and the GAL if they were ready to proceed, and they both answered that they were. The magistrate then denied the request for a continuance.

**{¶ 20}** "The granting or denial of a continuance is a matter entrusted to the broad, sound discretion of the trial judge, which will not be reversed absent an abuse of discretion." *In re S.F.*, 2d Dist. Montgomery No. 26865, 2016-Ohio-521, ¶ 17, citing *State v. Unger,* 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981). Typically, a party must request a continuance in writing before the date of the hearing, though one may be granted if the requesting party shows good cause. *See* Sup.R. 41(A).

**{¶ 21}** Here, Mother requested a continuance orally at the hearing itself. The only reason given for the requested continuance was that Mother had an unknown "medical issue." This did not show good cause for the continuance, as there was no indication that the circumstance was an emergency or unforeseen. Moreover, Mother has not cited, and we cannot find, any prejudice suffered because of the court's denial of the requested continuance. We conclude that the magistrate did not abuse its discretion.

**{¶ 22}** The second assignment of error is overruled.

### III. Conclusion

{¶ 23} We have overruled both of Mother's assignments of error. The trial court's judgment is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and WELBAUM, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Lisa M. Light
Mark A. Fisher
Michael Booher
Richard Barnes, GAL
J.S., Father
Hon. Anthony Capizzi